1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12   DEBORAH STAMPFLI, an individual,    No. 2:20-cv-01566-WBS-DMC

13              Plaintiff,

14        v.                             MEMORANDUM AND ORDER RE:
                                         SUSANVILLE SANITARY DISTRICT,
15   SUSANVILLE SANITARY DISTRICT, a     STEVEN J. STUMP, JOHN MURRAY,
     political subdivision of the        ERNIE PETERS, DAVID FRENCH,
16   State of California, STEVE J.        KIM ERB, AND MARTY HEATH'S
     STUMP, in his individual and        MOTION TO DISMISS
17   official capacities, ERNIE
     PETERS, in his individual and
18   official capacities, DAVID
     FRENCH, in his individual and
19   official capacities, KIM ERB, in
     his individual and official
20   capacities, MARTY HEATH, in his
     individual and official
21   capacities, DOES I-V, inclusive,
     BLACK & WHITE CORPORATIONS I-V,
22   and ABLE & BAKER COMPANIES,
     inclusive,
23
                Defendants.
24

25                         ----oo0oo----

26           Plaintiff Deborah Stampfli ("plaintiff") brought this

27   action against the Susanville Sanitary District ("District"),

28

                                1

1  Steve J. Stump, John Murray, Ernie Peters, David French, Kim Erb,

2  Marty Heath, Black & White Corporations I-V, Able and Baker

3  Companies, and Does 1-5 inclusive, for breach of express

4  contract, breach of implied in fact contract, promissory

5  estoppel, deprivation of procedural due process rights,

6  deprivation of substantive due process, conspiracy to deprive

7  plaintiff of procedural and substantive due process rights,

8  interference with contractual rights, infliction of emotional

9  distress, and failure to produce public records.

10       Before the court is the Susanville Sanitary District,

11  Steve Stump, John Murray, Ernie Peters, David French, Kim Erb,

12  and Marty Heath's Motion to Dismiss plaintiff's First Amended

13  Complaint. ("Mot. to Dismiss" (Docket No. 22).)

14  I.   <u>Factual and Procedural Background</u>

15       Plaintiff alleges that she was hired as treasurer by

16  the Susanville Sanitary District in 2005.  (<u>See</u> First. Am. Compl.

17  ("FAC") at ¶ 61 (Docket No. 20.)  At the time of her hiring,

18  plaintiff was allegedly informed that she would be a member of

19  Operating Engineers Local Union No. 3 and that she would be

20  entitled to the benefits and protections of the agreements

21  between the union and the District, including the right to

22  continued employment and termination only for good cause and

23  after the satisfaction of procedural requirements.  (<u>See</u> <u>id.</u>)

24  From 2005 to 2013, plaintiff alleges she performed her assigned

25  duties and a host of additional duties typically performed by

26  supervisory personnel, and consistently received high performance

27  evaluations.  (<u>See</u> <u>id.</u> at ¶ 62.)

28       By October 2013, plaintiff was performing many

2

1   management and administrative functions but, because she was a

2   union member, she could not participate in confidential meetings

3   of the District's Board of Directors.  (See id. at ¶ 65.)  Her

4   inability to participate in these meetings was inconvenient

5   because the board frequently had to stop meetings or delay them

6   to obtain information possessed only by plaintiff.  (See id.)

7   Because of these difficulties, the board proposed the creation of

8   a new management level position with the District entitled

9   "Office Administrator" which would allow plaintiff to participate

10  in confidential board meetings but would require her to

11  relinquish her union membership.  (See id.)

12          When plaintiff was offered this new position, she

13  declined it because she did not wish to lose the job security

14  offered by her union affiliation.  (See id. at ¶ 67.)  In

15  response to her concerns, plaintiff was allegedly advised by the

16  General Manager and the District's general counsel that although

17  she could not remain a union member, she would not be an at-will

18  employee and would be afforded all the job security rights and

19  benefits available to union members.  (See id. at ¶ 69.)

20  Plaintiff states she was promised that her employment with the

21  District would only be terminated for cause and in accordance

22  with established Skelly procedures.[1]  (See id.)  Because of these

23  alleged representations, plaintiff relinquished her position as

24  _____

25          [1]    The term Skelly procedures refers to the California
    Supreme Court case Skelly v. State Personnel Board, 15 Cal.3d 194
26  (1975).  In Skelly, the California Supreme Court held that a
    permanent public employee's property rights (i.e. their vested
27  right to continued employment) cannot be taken away by an
    employer without first being afforded certain procedural
28  safeguards.  See id. at 215.

1   treasurer and accepted the new position of Office Administrator.

2   (See id. at ¶ 70.)

3          During 2016, plaintiff performed many duties typically

4   performed by the General Manager.  (See id. at ¶ 75.)  By October

5   2017, the General Manager recommended to the board that plaintiff

6   be provided a 20% salary increase to account for the additional

7   duties she performed and that she receive the additional title of

8   Assistant General Manager.  (See id. at ¶ 80.)  During an October

9   2017 board meeting, the board stated that plaintiff's additional

10  duties would likely be temporary until such time as a new general

11  manager had obtained sufficient experience.  (See id. at ¶ 82.)

12  However, the board approved the recommended change and prepared a

13  new job description which stated that the plaintiff would work in

14  conjunction with the District General Manager.  (See id. at ¶

15  83.)

16         While the aforementioned events were unfolding, a

17  nearby local utility district discovered that its General Manager

18  had embezzled money from the district. (See id. at ¶ 85.)  The

19  members of the District's board wished to ensure that the

20  District not be victimized in the same fashion.  (See id.)

21  Plaintiff was specifically instructed to keep the board apprised

22  of any changes which might impair the security of the District's

23  financial accounting services.  (See id.)

24         In March 2018, the District hired defendant Steve Stump

25  to the position of probationary General Manager, and he relied

26  heavily on plaintiff for matters pertaining to administrative

27  operations.  (See id. at ¶ 87.)  Following the completion of

28  Stump's probationary period, he became increasingly hesitant to

1   work in conjunction with the plaintiff.  (See id. at ¶ 91.)

2   Plaintiff alleges that as part of his efforts to strip plaintiff

3   of any perceived co-equal authority she may have had with him,

4   Stump unilaterally amended plaintiff's job description to

5   eliminate the requirements that she work "in conjunction with"

6   the General Manager.  (See id. at ¶ 92.)

7         In April 2019, Stump wanted plaintiff to shift funds

8   from various accounts to allow for the purchase of a portable

9   generator.  (See id. at ¶¶ 94-95.)  Given plaintiff's

10   instructions from several board members regarding the financial

11   affairs of the District, she requested that Stump delay this

12   purchase until after a new budget for 2020 was created or seek

13   approval from the board for the purchase.  (See id.)  This

14   allegedly infuriated Stump because he believed plaintiff was

15   refusing to acknowledge his authority over her.  (See id.)

16         According to the FAC, Stump realized that plaintiff was

17   in control of the District's finances because certain computer

18   programs which controlled the District's finances were only on

19   the accounting department's computers.  (See id. at ¶ 99.)  On or

20   about January 8, 2020, Stump directed plaintiff to have these

21   computer programs placed on his personal office computer.  (See

22   id.)  By placing these programs on Stump's computer, it is

23   alleged, he would be able to transfer funds between accounts,

24   make payments out of accounts, adjust customer accounts, or

25   manipulate billings.  (See id. at ¶ 100.)  Because of the

26   instructions she had received from board members, plaintiff told

27   Stump that she wished to meet with certain board members to

28   determine whether it was necessary for such highly sensitive

1  programs to be placed on Stump's computer. (See id. at ¶ 101.)

2  Stump responded to this by telling plaintiff to "get

3  out" and informing her that she was on unpaid administrative

4  leave.  (See id. at ¶ 102.)  Plaintiff alleges that prior to this

5  action, Stump had never informed plaintiff that her refusal to

6  comply with his request would result in disciplinary action.

7  (See id.)  On January 14, 2020, plaintiff was informed that her

8  administrative leave would be paid, but not why she was placed on

9  leave in the first place.  (See id. at ¶ 104.)  On March 6, 2020,

10  Stump informed plaintiff that her "at-will" employment as Office

11  Administrator/Assistant General Manager was no longer needed and

12  would end as of March 6, 2020.  (See id. at ¶ 105.)

13  On March 30, 2020, plaintiff's counsel wrote to

14  defendants' counsel to demand that she be afforded all rights of

15  review and appeal of the decision to terminate her employment.

16  (See id. at ¶ 116.)  On or about April 6, 2020, defendants'

17  counsel wrote to plaintiff's counsel and informed him that

18  because plaintiff was an "at-will" employee, she had no such

19  rights to appeal or review.  (See id. at ¶ 117.)

20  II.  Discussion

21  Federal Rule of Civil Procedure 12(b)(6) allows for

22  dismissal when the plaintiff's complaint fails to state a claim

23  upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

24  The inquiry before the court is whether, accepting the

25  allegations in the complaint as true and drawing all reasonable

26  inferences in the plaintiff's favor, the complaint has stated "a

27  claim to relief that is plausible on its face."  Bell Atl. Corp.

28  v. Twombly, 550 U.S. 544, 570 (2007).  "The plausibility standard

is not akin to a 'probability requirement,' but it asks for more
than a sheer possibility that a defendant has acted unlawfully."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice."  Id.  Although legal
conclusions "can provide the framework of a complaint, they must
be supported by factual allegations."  Id. at 679.

A.   Federal Claims

        The only federal claims in the FAC are plaintiff's
fourth and fifth claims for violation of procedural and
substantive due process and her sixth claim for conspiracy in
connection with the termination her employment.  Although it does
not expressly say so in the FAC, plaintiff's counsel acknowledged
at the hearing that these claims are asserted under 42 U.S.C. §
1983.

        1.   Procedural Due Process

        Plaintiff contends in her fourth claim that she had a
constitutionally protected property interest in continued
employment which was violated when she was terminated and denied
the pre-and post-termination procedures duly enacted and adopted
by the District.  (See FAC at ¶¶ 160-64.)

                a.   Claims Against Individual Board Members and
                     General Manager

        To prevail on her claim that her termination
constituted a denial of property without due process of law,
plaintiff must first demonstrate that she had a protected
interest in continued employment.  Dorr v. Butte County, 795 F.2d
875, 876 (9th Cir. 1986).  State law defines what is and what is

1    not property.  Id.  Under California law, a permanent employee,

2    dismissible only for cause, has a property interest in his

3    continued employment which is protected by due process.  See

4    Skelly, 15 Cal.3d at 207-08 (internal quotations omitted).

5    However, plaintiff seems to acknowledge that her position had

6    been converted to a position terminable at will.  (See FAC at ¶

7    84.)  It is therefore not clear from the FAC that plaintiff had a

8    property interest in continued employment that was violated when

9    she was terminated.

10          Moreover, looking to the alleged conduct of the

11   individual board members and General Manager Stump, plaintiff

12   alleges that they violated her procedural due process rights when

13   they terminated her without cause and without following pre-and

14   post-termination procedures duly enacted and adopted by the

15   District.  (See FAC at ¶ 6.)  She alleges in conclusory terms

16   that all the board members had a duty to intervene and protect

17   her from unconstitutional acts, but that they refused to do so.

18   (See id. at ¶ 170.)  However, outside of the law enforcement

19   context, neither plaintiff, defendants, nor this court have found

20   any California, the Ninth Circuit, or in Supreme Court precedent

21   supporting such a duty to intercede.  (See Pl's Opp'n to Mot. to

22   Dismiss at 61.); Defs.' Reply in Supp. of Mot. to Dismiss at 26

23   (Docket No. 29).)

24          Plaintiff's FAC does not even seem to clearly allege

25   facts that identify who was responsible for her termination.

26   Plaintiff first states that it was the board who voted to

27   terminate her without just cause. (See FAC at ¶ 6.)  She then

28   goes on to state that it was actually General Manager Stump who

1   placed her on unpaid administrative leave and ultimately fired

2   her.  (See FAC at ¶¶ 102–106.)  The FAC does not even specify a

3   vote by the board.  To the contrary, the FAC actually alleges

4   that there were instances where Stump acted unilaterally and

5   without board approval. (See FAC  at ¶¶ 92–93.)  In short,

6   plaintiff does not sufficiently allege who caused the injuries of

7   which she complains.  Accordingly, plaintiff's procedural due

8   process claims against the individual defendants will be

9   dismissed.

10                    b.   Claim Against the District

11           Because 42 U.S.C. § 1983 does not provide for vicarious

12   liability, local governments "may not be sued under § 1983 for an

13   injury inflicted solely by its employees or agents."  Monell v.

14   Department of Social Services of the City of New York, 436 U.S.

15   658, 694 (1978).  "Instead, it is when execution of a

16   government's policy or custom, whether made by its lawmakers or

17   by those whose edicts or acts may be fairly said to represent

18   official policy, inflicts the injury that the government as an

19   entity is responsible under § 1983."  Id.

20           To survive a motion to dismiss, a plaintiff must do

21   more than simply allege that a Monell defendant "maintained or

22   permitted an official policy, custom, or practice of knowingly

23   permitting the occurrence of the type of wrongs" alleged in the

24   complaint.  See AE ex. rel. Hernandez v. County of Tulare, 666

25   F.3d 631, 637 (9th Cir. 2012).  Facts regarding the specific

26   nature of the alleged policy, custom, or practice are required;

27   merely stating the subject to which the policy relates (e.g.,

28   excessive force) is insufficient.  See id.

9

1          To establish _Monell_ liability based upon governmental

2    policy custom, plaintiffs must show that (1) they were deprived

3    of a constitutional right, (2) the municipality had a policy; (3)

4    the policy amounted to a deliberate indifference to their

5    constitutional right; and (4) the policy was the "moving force

6    behind the constitutional violation." _See_ _Mabe v. San Bernardino_

7    _County_, 237 F.3d 1101, 1110–11 (9th Cir. 2001)(citing _Van Ort v._

8    _Estate of Stanewich_, 93 F.3d 831, 835 (9th Cir. 1996)).

9          For an unwritten policy or custom to form the basis of

10   a _Monell_ claim, it must be so "persistent and widespread" that it

11   constitutes a "permanent and well settled" practice.  _See_ _Monell_,

12   436 U.S. at 691.  In pleading such a claim, the complaint must

13   "put forth additional facts regarding the specific nature of

14   [the] alleged policy, custom, or practice." _See_ _AE ex. rel._

15   _Hernandez_, 666 F.3d at 637.  "Liability for improper custom may

16   not be predicated on isolated or sporadic incidents; it must be

17   founded upon practices of sufficient duration, frequency and

18   consistency that the conduct has become a traditional method of

19   carrying out policy." _See_ _Trevino v. Gates_, 99 F.3d 911, 918

20   (9th Cir. 1996).

21         Here, the thrust of the allegations against the

22   District is that it "adopted a de facto and unconstitutional

23   policy by failing to enforce its own adopted policies and

24   procedures when it was clearly obvious that said policies were

25   being ignored by its management employees."  (_See_ FAC at ¶ 173.)

26   However, plaintiff has not alleged facts to support that this

27   "unconstitutional custom or policy" was anything more than an

28   isolated or sporadic incident.  Indeed, she contends that she is

1   the only employee to have been terminated without cause and

2   without complying with the mandates created by Resolution 04.06

3   and Skelly.  (See id. at ¶ 63.)  Liability for improper custom or

4   policy must be predicated on practices of sufficient duration,

5   frequency and consistency such that the conduct has become a

6   traditional method of carrying out policy.  See Trevino, 99 F.3d

7   at 918.

8           Plaintiff's allegations are therefore insufficient to

9   state a plausible, not merely possible, claim for relief based

10  upon procedural due process violations against the District.  See

11  AE ex rel. Hernandez, 666 F.3d at 637.

12                  2.  Substantive Due Process

13          "The substantive component of the Due Process Clause

14  forbids the government from depriving a person of life, liberty,

15  or property in such a way that. . . interferes with rights

16  implicit in the concept of ordered liberty."  See Engquist v.

17  Oregon Dept. of Agric., 478 F.3d 985, 996 (9th Cir. 2007).  A

18  threshold requirement to a substantive or procedural due process

19  claim is the plaintiff's showing of a liberty or property

20  interest protected by the Constitution.  See id.  "Most courts

21  have rejected the claim that substantive due process protects the

22  right to a particular public employment position and [the Ninth

23  Circuit] has yet to decide the issue."  Id. at 996-97.  The Ninth

24  Circuit has recognized that "there is substantive due process

25  protection against government employer actions that foreclose

26  access to a particular profession to the same degree as

27  government regulation."  Id. at 998.  However, the Ninth Circuit

28  has limited substantive due process claims for a public

                                11

1   employer's violation of occupational liberty to extreme cases

2   such as a government blacklist, which when circulated or

3   otherwise publicized to prospective employers effectively

4   excludes the blacklisted individual from his occupation.  See id.

5          Plaintiff's fifth claim alleges that she possessed a

6   constitutionally protected property right and/or liberty interest

7   in continued employment and that defendants have violated her

8   substantive due process right to such employment.  (See FAC at ¶¶

9   176–191.)  She also alleges that "the conduct of the defendants

10  has deprived [her] of all ability to obtain employment in her

11  chosen field and is shocking to the conscience."  (See id. at ¶

12  180.)  These conclusory allegations are insufficient to plausibly

13  allege that she had a constitutionally protected substantive due

14  process right in her continued employment at the Susanville

15  Sanitary District.

16          The Ninth Circuit has not recognized that substantive

17  due process protects the right to a particular public employment

18  position.  See Engquist, 478 F.3d at 996–97.  Although plaintiff

19  states that she has been "deprived of all ability to obtain

20  employment in her chosen field", (see FAC at ¶ 180), she has

21  pleaded no facts to support this bald assertion.  Nor has

22  plaintiff pleaded facts that would plausibly support an inference

23  that the defendants' conduct "shocks the conscience."  (See FAC

24  at ¶ 180.)  Accordingly, defendants' motion to dismiss

25  plaintiff's substantive due process claim will be granted.

26

27          3.   Conspiracy to Deprive Substantive and Procedural
               Due Process Rights

28

12

1          Plaintiff's sixth claim alleges conspiracy with the

2    intent of depriving plaintiff of her constitutionally protected

3    substantive and procedural due process rights.  (See FAC at ¶¶

4    192-198.)  Because the court has determined that plaintiff has

5    not sufficiently alleged that she had a substantive due process

6    right under the United States Constitution to continued

7    employment at the District, there can be no conspiracy to deprive

8    plaintiff of non-existent substantive due process rights.  With

9    regard to her procedural due process rights, plaintiff merely

10   alleges, without any factual specificity, that the defendants

11   "either expressly, implicitly, or tacitly, agreed, cooperated, or

12   joined in a concerted action to deprive plaintiff of her

13   Constitutionally protected property and/or liberty rights."  (See

14   FAC at ¶ 193.)  Such conclusory allegations do not suffice.

15   Accordingly, plaintiff's sixth cause of action for conspiracy to

16   deprive plaintiff of due process rights will be dismissed.

17              B.  State Law Claims

18          Because all of plaintiff's federal claims must be

19   dismissed, in its discretion under 28 U.S.C. § 1367(c)(3), the

20   court will decline to exercise jurisdiction over plaintiff's

21   supplemental state law claims at this time.  Any further amended

22   complaint filed pursuant to this Order shall be deemed to

23   supersede the first amended complaint, and if plaintiff elects to

24   file a second amended complaint which reasserts her state law

25   claims, defendants may reassert their motion to dismiss the state

26   law claims at that time.[2]

27   _____

28          [2]   Because defendants' request for judicial notice
     pertains solely to the state law claims, the court declines to

13

1          IT IS THEREFORE ORDERED that defendants' motion to

2   dismiss (Docket No. 22) be, and the same is, hereby GRANTED with

3   respect to the fourth, fifth, and sixth claims of the First

4   Amended Complaint.  Plaintiff has twenty days from the date this

5   Order is signed to file an amended complaint, if she can do so

6   consistent with this Order.

7   Dated:  March 11, 2021

8   WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  take judicial notice at this time.