1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10                                 ----oo0oo----

11

12   DEBORAH STAMPFLI, an individual,      No. 2:20-cv-01566-WBS-DMC

13
                    Plaintiff,
14                                          MEMORANDUM AND ORDER RE:
          v.                                SUSANVILLE SANITARY DISTRICT,
15                                          STEVEN J. STUMP, JOHN MURRAY,
     SUSANVILLE SANITARY DISTRICT, a        ERNIE PETERS, DAVID FRENCH,
16   political subdivision of the           KIM ERB, AND MARTY HEATH'S
     State of California, STEVE J.          MOTION TO DISMISS
17   STUMP, in his individual and
     official capacities, ERNIE
18   PETERS, in his individual and
     official capacities, DAVID
19   FRENCH, in his individual and
     official capacities, KIM ERB, in
20   his individual and official
     capacities, MARTY HEATH, in his
21   individual and official
     capacities, DOES I-V, inclusive,
22   BLACK & WHITE CORPORATIONS I-V,
     and ABLE & BAKER COMPANIES,
23   inclusive,,

24                   Defendant.

25

26                                 ----oo0oo----

27           Plaintiff Deborah Stampfli ("plaintiff") brought this

28   action against the Susanville Sanitary District ("District"),

                                      1

1  Steve J. Stump, John Murray, Ernie Peters, David French, Kim Erb,

2  Marty Heath, Black & White Corporations I-V, Able and Baker

3  Companies, and Does 1-5 inclusive, for breach of express

4  contract, breach of implied-in-fact contract, promissory

5  estoppel, violation of district laws, policies, and procedure,

6  deprivation of federal and state procedural due process rights,

7  conspiracy to deprive plaintiff of procedural due process rights,

8  and failure to produce public records.

9       Defendants now move to dismiss the Second Amended

10  Complaint pursuant to Federal Rule of Civil Procedure 12 (b)(6)

11  for failure to state a claim upon which relief can be granted.

12  ("Mot. to Dismiss" (Docket No. 42).)

13  I.   Factual and Procedural Background

14       Plaintiff was hired as treasurer by the District in

15  2005.  (See 2d. Am. Compl. ("SAC") at ¶ 90 (Docket No. 38.))  At

16  the time of her hiring, plaintiff was informed that she would be

17  a member of Operating Engineers Local Union No. 3 and that she

18  would be entitled to the benefits and protections of the

19  agreements between the union and the District, including the

20  right to continued employment and termination only for good cause

21  and after the satisfaction of procedural requirements.  (See id.)

22  From 2005 to 2013, plaintiff performed her assigned duties and a

23  host of additional duties typically performed by supervisory

24  personnel, and consistently received high performance

25  evaluations.  (See id. at ¶ 91.)

26       By October 2013, plaintiff was performing many

27  management and administrative functions but, because she was a

28  union member, she could not participate in confidential meetings

1  of the District's Board of Directors ("the board").  (See id. at

2  ¶ 94.)  Her inability to participate in these meetings was

3  inconvenient because the board frequently had to stop meetings or

4  delay them to obtain information possessed only by plaintiff.

5  (See id.)  Because of these difficulties, the board proposed the

6  creation of a new management level position with the District

7  entitled "Office Administrator" which would allow plaintiff to

8  participate in confidential board meetings but would require her

9  to relinquish her union membership.  (See id.)

10        When plaintiff was offered this new position, she

11  declined it because she did not wish to lose the job security

12  offered by her union affiliation.  (See id. at ¶ 96.)  In

13  response to her concerns, plaintiff was advised by the General

14  Manager and the District's general counsel that although she

15  could not remain a union member, she would not become an at-will

16  employee and would be afforded all the job security rights and

17  benefits available to union members.  (See id. at ¶ 98.)

18  Plaintiff was promised that her employment with the District

19  would only be terminated for cause and in accordance with

20  established Skelly procedures.[1]  (See id.)  Because of these

21  representations, plaintiff relinquished her position as treasurer

22  and accepted the new position of Office Administrator.  (See id.

23  at ¶ 99.)

24  _____

25        [1]   The term Skelly procedures refers to the California
    Supreme Court case Skelly v. State Personnel Board, 15 Cal.3d 194
26  (1975).  In Skelly, the California Supreme Court held that a
    permanent public employee's property rights (i.e. their vested
27  right to continued employment) cannot be taken away by an
    employer without first being afforded certain procedural
28  safeguards.  See id. at 215.

3

1    During 2016, plaintiff performed many duties typically
2    performed by the General Manager.  (See id. at ¶ 104.)  By
3    October 2017, the General Manager recommended to the board that
4    plaintiff be provided a 20% salary increase to account for the
5    additional duties she performed and that she receive the
6    additional title of Assistant General Manager.  (See id. at ¶
7    109.)  During an October 2017 board meeting, the board stated
8    that plaintiff's additional duties would likely be temporary
9    until such time as a new general manager had obtained sufficient
10   experience.  (See id. at ¶ 112.)  Plaintiff was fully aware that
11   there might come a time when the new General Manager no longer
12   needed her assistance in performing the duties and functions of
13   General Manager, and was led to believe that if this change
14   occurred, she would be relieved of any additional Assistant
15   General Manager duties, but would continue to perform all the
16   functions she previously performed as Office Administrator.  (See
17   id. at ¶ 114.)  Plaintiff was never told that her position as
18   Office Administrator had somehow been converted to a position
19   terminable at will or that she could summarily be deprived of her
20   permanent position of Office Administrator.  (See id.)  However,
21   the board approved the recommended change and prepared a new job
22   description which stated that the plaintiff would work in
23   conjunction with the District's General Manager.  (See id. at ¶
24   113.)

25       While the aforementioned events were unfolding, a
26   nearby local utility district discovered that its General Manager
27   had embezzled money from the district.  (See id. at ¶ 116.)  The
28   members of the District's board wished to ensure that the

1   District not be victimized in the same fashion.  (See id.)

2   Plaintiff was specifically instructed to keep the board apprised

3   of any changes which might impair the security of the District's

4   financial accounting services.  (See id.)

5          In March 2018, the District hired defendant Steve Stump

6   to the position of probationary General Manager, and he relied

7   heavily on plaintiff for matters pertaining to administrative

8   operations.  (See id. at ¶ 118.)  Following the completion of

9   General Manager Stump's probationary period, he became

10  increasingly hesitant to work in conjunction with the plaintiff.

11  (See id. at ¶ 122.)  As part of his efforts to strip plaintiff of

12  any perceived co-equal authority she may have had with him, he

13  unilaterally amended plaintiff's job description to eliminate the

14  requirements that she work "in conjunction with" the General

15  Manager.  (See id. at ¶ 123.)

16         In April 2019, General Manager Stump wanted plaintiff

17  to shift funds from various accounts to allow for the purchase of

18  a portable generator.  (See id. at ¶¶ 125-26.)  Given plaintiff's

19  instructions from several board members regarding the financial

20  affairs of the District, she requested that General Manager Stump

21  delay this purchase until after a new budget for 2020 was created

22  or seek approval from the board for the purchase.  (See id.)

23  This infuriated him because he believed plaintiff was refusing to

24  acknowledge his authority over her.  (See id.)

25         General Manager Stump realized that plaintiff was in

26  control of the District's finances because certain computer

27  programs which controlled the District's finances were only on

28  the accounting department's computers.  (See id. at ¶ 130.)  On

or about January 8, 2020, General Manager Stump directed plaintiff to have these computer programs placed on his personal office computer.  (See id.)  By placing these programs on his computer, he would be able to transfer funds between accounts, make payments out of accounts, adjust customer accounts, or manipulate billings.  (See id. at ¶ 131.)  Because of the instructions she had received from board members, plaintiff told General Manager Stump that she wished to meet with certain board members to determine whether it was necessary for such highly sensitive programs to be placed on his computer.  (See id. at ¶ 132.)

General Manager Stump responded to this by telling plaintiff to "get out" and informing her that she was on unpaid administrative leave.  (See id. at ¶ 133.)  Prior to this action, General Manager Stump had never informed plaintiff that her refusal to comply with his request would result in disciplinary action.  (See id.)  On January 14, 2020, plaintiff was informed by General Manager Stump that her administrative leave would be paid, but not why she was placed on leave in the first place.  (See id. at ¶ 135.)  On March 6, 2020, General Manager Stump informed plaintiff that her "at-will" employment as Office Administrator/Assistant General Manager was no longer needed and would end as of March 6, 2020.  (See id. at ¶ 136.)  At the time of her termination, plaintiff had accrued 128 hours of earned sick leave and 8 hours of personal leave.  (See id. at ¶ 137.)  Prior to her termination, the plaintiff had never received notice of the reason for her administrative leave nor was she ever

1   afforded an opportunity to be heard.  (See id. at ¶ 138.)[2]

2   II.   Discussion

3        The relevant inquiry under Rule 12(b)(6) is whether,

4   accepting the allegations in the complaint as true and drawing

5   all reasonable inferences in the plaintiff's favor, the complaint

6   has stated "a claim to relief that is plausible on its face."

7   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "The

8   plausibility standard is not akin to a 'probability requirement,'

9   but it asks for more than a sheer possibility that a defendant

10  has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678

11  (2009).  "Threadbare recitals of the elements of a cause of

12  action, supported by mere conclusory statements, do not suffice."

13  Id.  Although legal conclusions "can provide the framework of a

14  complaint, they must be supported by factual allegations."  Id.

15  at 679.

16  III.  Federal Claims

17        A.   Procedural Due Process

18        Plaintiff's fifth cause of action alleges that she was

19  deprived of procedural due process rights under the United States

20  Constitution.  She contends that she had a constitutionally

21  protected property interest in continued employment which was

22  violated by General Manager Stump, the individual members of the

23  board, and the District itself when she was terminated without

24  good cause and denied the pre- and post- termination procedures

25  duly enacted and adopted by the District.  (See SAC at ¶¶ 240-

26

27        [2]   Although both plaintiff and defendants submitted
    extrinsic evidence to the court, after conferring with the court
    at the hearing on June 14, 2021, the parties agreed that the
28  extrinsic evidence should not be taken into consideration.

1  61.)

2          1.   Claims Against General Manager Stump

3          Plaintiff asserts that General Manager Stump violated

4  her procedural due process rights under the United States

5  Constitution when he terminated her without cause and without

6  following policies duly enacted and adopted by the District.

7  (See SAC at ¶ 240-260.)   To state a claim for a violation of §

8  1983, a plaintiff must allege: (1) a violation of rights

9  protected by the Constitution or created by federal statute; (2)

10  proximately caused by a "person"; (3) who was acting under color

11  of state law.  See Crumpton v. Gates, 947 F.2d 1418, 1420 (9th

12  Cir. 1991).

13          "The requirements of procedural due process apply only

14  to the deprivation of interests encompassed by the Fourteenth

15  Amendment's protection of liberty and property."  Board of

16  Regents v. Roth, 408 U.S. 564, 569 (1972).  State law defines

17  what is and what is not property.  See Dorr v. Butte Cnty., 795

18  F.2d 875, 876 (9th Cir. 1986).  Under California law, a

19  "permanent employee," dismissible only for cause, has "a property

20  interest in his continued employment which is protected by due

21  process."  Skelly, 15 Cal.3d 194, 207-08 (1975).  While "a

22  probationary (or nontenured) civil service employee, at least

23  ordinarily, may be dismissed without a hearing or judicially

24  cognizable good cause, an employee who has completed her

25  probationary period ordinarily has a legitimate claim of

26  entitlement to continued public employment."  See Dorr, 795 F.2d

27  at 876. (internal citations omitted).

28          Plaintiff has alleged that she was a permanent employee

8

1   and had completed any probationary period associated with her

2   position.  (See SAC at ¶ 115.)  Plaintiff has identified policies

3   promulgated by the District, such as Resolution 04.06 enacted in

4   July 2004, which states that "individuals shall only be

5   disciplined for just cause." (See id. at ¶ 77).  Plaintiff also

6   points to District Ordinance No. 17, enacted in March 1976, which

7   states that the "District Manager shall have the right, for due

8   cause. . . to dismiss. . . or suspend without pay for thirty

9   calendar days any permanent employee."  (See id. at ¶ 70.)

10  Ordinance No. 17 further provides that "notice of such action

11  must be in writing and served personally on such employee and . .

12  . shall specify the penalty and contain a statement of the reason

13  or reasons therefore."  (See id.)  Plaintiff has therefore

14  adequately alleged that she was a permanent employee dismissible

15  only for cause and had a property interest in her continued

16  employment protected by due process.

17       Defendants apparently do not dispute that plaintiff's

18  termination was proximately caused by General Manager Stump or

19  that he was acting under color of state law.  Plaintiff has

20  alleged that it was General Manager Stump who placed her on

21  administrative leave, (see SAC at ¶¶ 133–135), and terminated her

22  on March 6, 2020.  (See SAC at ¶ 136.)  This suffices to allege

23  that General Manager Stump's action was the proximate cause of

24  her alleged injury at this stage of the proceedings.  Plaintiff

25  has also identified Ordinance No. 17, which states that the

26  District Manager (here, General Manager Stump) "shall have the

27  right, for due cause, . . . to dismiss. . . any permanent

28  employee." (See SAC at ¶ 70.)  The Supreme Court has held that

1  "generally, a public employee acts under color of state law while

2  acting in his official capacity or while exercising his

3  responsibilities pursuant to state law." West v. Atkins, 487

4  U.S. 42, 50 (1988).  Plaintiff has accordingly also adequately

5  alleged that General Manager Stump was acting under color of

6  state law when he terminated her without pre- or post-termination

7  proceedings.

8      Defendants alternatively argue that General Manager

9  Stump is entitled to qualified immunity in his individual

10 capacity because a reasonable officer in his position would have

11 believed that it was acceptable to terminate an at-will employee

12 employed by the District.  (See Mot. to Dismiss at 8-12.)  The

13 doctrine of qualified immunity "protects government officials

14 'from liability for civil damages insofar as their conduct does

15 not violate clearly established statutory or constitutional

16 rights of which a reasonable person would have known.'" Pearson

17 v. Callahan, 555 U.S. 223, 231 (2009)(citing Harlow v.

18 Fitzgerald, 457 U.S. 800, 818 (1982)).  However, "[d]etermining

19 claims of qualified immunity at the motion to dismiss stage

20 raises special problems for legal decision making." See Keates

21 v. Koile, 883 F.3d 1228, 1234 (9th Cir. 2018).  The Ninth Circuit

22 has opined that "[i]f the operative complaint contains even one

23 allegation of a harmful act that would constitute a violation of

24 a clearly established constitutional right, then plaintiffs are

25 entitled to go forward with their claims." See id. at 1235.

26     As discussed above, plaintiff has adequately alleged

27 that she was a permanent employee, dismissible only for cause,

28 with "a property interest in [her] continued employment which is

1  protected by due process." Skelly, 15 Cal.3d at 207-08.  The

2  right to procedural due process for tenured public employees who

3  are dismissible only for cause is well-established under federal

4  law.  See Bd. of Regents of State College v. Roth, 408 U.S. 564

5  (1972); see Dorr, 795 F.2d at 876.  Defendants' argument assumes

6  that plaintiff was an at-will employee, or, at the least, that it

7  would have been reasonable for an officer in General Manager

8  Stump's position to believe that plaintiff was an at-will

9  employee.  Such an assumption runs counter to the allegations in

10 plaintiff's complaint, however.  See Enesco Corp. v.

11 Price/Costco, Inc., 146 F.3d 1083, 1085 (9th Cir. 1998) (stating

12 that all allegations of material fact are taken as true and

13 construed in the light most favorable to the nonmoving party).

14 Therefore, the court concludes that General Manager Stump is not

15 entitled to qualified immunity at this stage.

16       Accordingly, the court will deny defendants' motion to

17 dismiss plaintiff's procedural due process claim under 42 U.S.C.

18 § 1983 as against General Manager Stump.

19            2.   Claims Against Individual Board Members

20       Plaintiff next asserts that the individual board

21 members violated plaintiff's procedural due process rights under

22 the United States Constitution when they terminated her without

23 cause and without following pre- and post- termination procedures

24 duly enacted and adopted by the District.  (See SAC at ¶¶ 240-

25 260.)  She further alleges that if the board members did not

26 actually vote to terminate her without cause, they "authorized,

27 approved, knowingly acquiesced in, and/or ratified" the actions

28 of the other defendants who deprived plaintiff of her

1    constitutional rights and did not intervene to protect her from

2    unconstitutional acts.    (See id. at ¶¶ 12-30.)

3            Plaintiff's Second Amended Complaint is completely

4    devoid of any facts demonstrating that the board, or any

5    individual board member, played any role in her termination, or

6    even ratified her termination after it occurred.    Plaintiff

7    candidly states in her opposition that "[s]he does not know what

8    role the board played in the decision [to terminate her]."    (See

9    Opp'n to Mot. to Dismiss at 27.) (Docket No. 44.)    While she

10   states that she "fully believes that Mr. Stump had gained the

11   approval of the Board before he terminated the plaintiff's

12   employment," (see id.), her mere belief, absent any facts to

13   support it, does not suffice.

14           The closed session meetings that plaintiff points the

15   court to in which the board discussed the "significant exposure

16   to litigation" prior to her termination similarly do not provide

17   any facts to support her allegation that the board played a role

18   in terminating her or that the board ratified the decision to

19   terminate her.    (See SAC at ¶¶ 49-58.)    Nor do these sessions

20   indicate that the individual board members or the Board "refused

21   the plaintiff's request for pre- and post- termination due

22   process."    (See Opp'n to Mot. to Dismiss at 42.)    The only thing

23   that these agendas indicate is that the board was concerned about

24   potential litigation from plaintiff and had closed session

25   meetings to discuss this with counsel.    In short, plaintiff has

26   not adequately alleged facts to demonstrate that the board played

27   any role in her termination or the decision to deny her

28   procedural due process rights to a pre- and post- termination

1  hearing.

2         Plaintiff additionally contends that the individual

3  board members may be held liable for their failure to take

4  remedial steps after the alleged deprivation of her procedural

5  due process rights, even if they did not affirmatively vote to

6  terminate her or deny her procedural due process rights.  (See

7  Opp'n to Mot. to Dismiss at 41.)  Plaintiff argues that the

8  failure to "take any remedial steps after the violations can

9  indicate a deliberate choice and establish an independent basis

10  for liability."  (See id. (citing McKay v. City of Hayward, 949

11  F. Supp. 2d 971, 986 (N.D. Cal. 2013)); see also Gomez v. Vernon,

12  255 F.3d 1118, 1127 (9th Cir. 2001) (holding that a "turn-a-blind

13  eye approach does not insulate the Department").)

14         However, as the court stated in its previous order,

15  (see Docket No. 34 at 8.), neither plaintiff, defendants, nor

16  this court have identified any binding precedent supporting a

17  duty to intercede outside of the law enforcement context.  The

18  cases cited by plaintiff are distinguishable because those cases

19  both dealt with the law enforcement and prison context,

20  respectively, and were concerned with municipal or departmental

21  liability for failing to take remedial steps after violations,

22  not the liability of defendants acting in their individual

23  capacities.  Plaintiffs contend that Monteilh v. County of Los

24  Angeles, 820 F. Supp. 2d 1081, 1093 (C.D. Cal. 2011) only stands

25  for the limited proposition that the "Constitution does not

26  require all public employees to intercede, outside their own

27  bureaucratic hierarchies, on behalf of persons whose rights are

28  in jeopardy."  However, plaintiff has not identified any binding

13

1  case which affirmatively requires public employees, outside of

2  the law enforcement context, to intercede on behalf of persons

3  whose rights are in jeopardy even within their own bureaucratic

4  hierarchies.  In the absence of such binding precedent, the court

5  finds that plaintiff has not adequately demonstrated that the

6  individual board members had a duty to intervene to protect

7  plaintiff from a violation of her procedural due process rights.

8       Accordingly, the court will grant defendants' motion to

9  dismiss this claim as to the individual board members.

10              3.   Claims Against the District

11      Plaintiff alleges that the District is liable for the

12  violation of plaintiff's procedural due process rights.  (See SAC

13  at ¶¶ 244-247); (see Pl.'s Opp'n at 32-39.)  Because 42 U.S.C. §

14  1983 does not provide for vicarious liability, local governments

15  "may not be sued under § 1983 for an injury inflicted solely by

16  its employees or agents."  Monell v. Department of Social

17  Services of the City of New York, 436 U.S. 658, 694 (1978)

18  "Instead, it is when execution of a government's policy or

19  custom, whether made by its lawmakers or by those whose edicts or

20  acts may be fairly said to represent official policy, inflicts

21  the injury that the government as an entity is responsible under

22  § 1983."  Id.

23      The Supreme Court has held that "municipal liability

24  may be imposed for a single decision by municipal policymakers

25  under appropriate circumstances."  See Pembaur v. City of

26  Cincinnati, 475 U.S. 469, 481 (1986).  However, "[t]he fact that

27  a particular official, even a policymaking official, has

28  discretion in the exercise of particular functions does not,

14

1   without more, give rise to municipal liability based on an

2   exercise of that discretion."  See id. at 482.  "The official

3   must also be responsible for establishing final governmental

4   policy respecting such activity before the municipality can be

5   held liable."  See id. at 482-483.  The Supreme Court has made

6   clear that "municipal liability under § 1983 attaches where, and

7   only where, a deliberate choice to follow a course of action is

8   made from among various alternatives by the official or officials

9   responsible for establishing final policy with respect to the

10  subject matter in question."  See id. at 483.  Whether a

11  particular official has final policy-making authority is a

12  question of state law.  See City of St. Louis v. Praprotnik, 485

13  U.S. 112, 123-24 (1988).

14        Plaintiff alleges in her complaint that General Manager

15  Stump is a policy maker for the District and therefore his

16  actions constitute official policy.  (See SAC at ¶¶ 10, 33-34.)[3]

17  She has also alleged that General Manager Stump terminated her

18  and placed her on administrative leave.  (See SAC at ¶¶ 133-36).

19  Therefore, the court must determine whether General Manager Stump

20  has "final policymaking authority" under state law, such that his

21  action in allegedly terminating plaintiff without procedural due

22  process protections constituted official district policy.  See

23  Pembaur, 475 U.S. at 480-81.  Although plaintiff has not stated

24  _____

25        [3]   As the court has articulated above, plaintiff has
    failed to plead facts regarding the individual board members or
26  the board as a whole which indicate that the board played any
    role in her termination or the decision to allegedly deprive her
27  of pre - and post- termination procedural due process, or that it
    ratified the decision to terminate her.

28

                                  15

1    that General Manager Stump had "final policymaking authority",

2    she has alleged that he was delegated the authority to act on

3    behalf of the District with regard to the decisions to hire,

4    fire, and discipline employees and with regard to the process by

5    which employees were disciplined or terminated.  (See SAC at ¶¶

6    33–34.)  However, plaintiff also cites to California Health &

7    Safety Code § 6497 in her opposition which provides that "the

8    sanitary board may make rules to carry out the purposes of this

9    section, and for examinations, appointments, promotions, and

10   removals, and may from time to time make changes in existing

11   rules."  (See Opp'n to Mot. to Dismiss at 36.);  see Cal. Health

12   & Safety Code § 6497.

13           The court concludes that plaintiff has not adequately

14   alleged that General Manager Stump was a final policymaker for

15   the District in the area of employment such that the District can

16   be liable for his decision to terminate her.  In Gillette v.

17   Delmore, 979 F. 2d 1342, 1350 (9th Cir. 1992), the Ninth Circuit

18   concluded that a Fire Chief's discretionary authority to hire and

19   fire employees was insufficient to establish a basis for

20   municipal liability because he was not responsible for

21   establishing the city's employment policy; rather, the city

22   charter granted such authority to the City Manager and City

23   Council.  See id.  The Gillette court accordingly held that the

24   Fire Chief was not a final policymaker and his decision could not

25   be attributed to the city.  See id.  Similarly, while General

26   Manager Stump may have had the discretion to terminate the

27   plaintiff, like the Fire Chief in Gillette, he does not appear to

28   have been responsible for establishing the District's employment

1  or promotional policies.  Rather, the state policy that plaintiff

2  identified indicates that it is the District's board, rather than

3  General Manager Stump, that is responsible for establishing the

4  District's employment policies.  See Cal. Health & Safety Code §

5  6497.  Plaintiff does not allege sufficient facts to indicate

6  that the board took any role in either ratifying Mr. Stump's

7  decision, affirmatively voting to terminate plaintiff, or denying

8  plaintiff procedural due process rights.  Therefore, the court

9  must conclude that, as in Gillette, General Manager Stump was not

10 a final policy maker and his decision to terminate plaintiff

11 cannot be attributed to the District.

12        Accordingly, the court will grant defendants' motion to

13 dismiss plaintiff's procedural due process claim under 42 U.S.C.

14 § 1983 as against the Susanville Sanitary District.

15    B.    Conspiracy to Deprive Procedural Due Process

16        Plaintiff's sixth cause of action alleges that the

17 District, individual board members, and General Manager Stump

18 engaged in a conspiracy with the intent of depriving plaintiff of

19 her procedural due process rights protected under the federal

20 constitution.  (See SAC at ¶¶ 262-270.)  However, "conspiracy is

21 not itself a constitutional tort under § 1983."  See Lacey v.

22 Maricopa Cnty., 693 F.3d 896, 935 (9th Cir. 2012)(internal

23 citations omitted).  While conspiracy allegations have sometimes

24 been used by plaintiffs to "draw in private parties who would

25 otherwise not be susceptible to a § 1983 action because of the

26 state action doctrine or to aid in proving claims against

27 otherwise tenuously connected parties in a complex case" (see

28 id.), plaintiff may not bootstrap a § 1983 claim into a separate

1  cause of action for conspiracy simply by alleging that two or
2  more persons combined to commit the action.[4]  Plaintiff has cited
3  no legal authority whatsoever to support her claim of conspiracy
4  in her opposition.  (See Opp'n to Mot. to Dismiss at 51-52.)
5  Accordingly, the court will grant defendants' motion to dismiss
6  this claim.[5]

7  V.     State Law Claims

8         A.    Violation of District Law, Policy, and Procedure

9              Plaintiff has styled her fourth cause of action as
10 "Violation of District Law, Policy, and Procedure."  (See SAC at
11 ¶¶ 207-239.)  Plaintiff argues she did so because defendants
12 argued in their previous motion to dismiss that "the only basis

---

14     [4]   Plaintiff has never given any indication that she seeks
   to bring a cause of action for conspiracy under 42 U.S.C. § 1985.
15 Despite being asked by the court to identify the statute or
   common law doctrine that she claims authorizes her cause of
16 action, plaintiff has failed to do so again in her Second Amended
   Complaint.
17

18     [5]   The court notes that plaintiff has sued both General
   Manager Stump and the individual members of the Susanville
19 Sanitary Board of Directors in their official and individual
   capacities.  (See generally SAC.)  Individual capacity suits seek
20 to impose personal liability upon a government official for
   actions he takes under color of state law.  See Scheuer v.
21 Rhodes, 416 U.S. 232, 237-38 (1974).  Official capacity suits, in
   contrast, "generally represent only another way of pleading an
22 action against an entity of which an officer is an agent."  See
   Monell, 436 U.S. at 690 n. 55.  As long as the government entity
23 receives notice and an opportunity to respond, an official-
   capacity suit is, in all respects other than name, to be treated
24 as a suit against the entity.  See Kentucky v. Graham, 473 U.S.
   159, 166 (1985)(internal citations omitted).  Because the court
25 has concluded that the District is not liable for either of
   plaintiff's federal claims, the court will also dismiss the
26 federal claims against all defendants in their official
   capacities.
27

28
                              18

1   on which a public employee can complain about termination is that

2   the employer violated its own laws in carrying out the

3   termination."  (See Opp'n to Mot. to Dismiss at 52.)  Leaving

4   aside the obvious point that it is unwise to base a cause of

5   action in a complaint solely on an argument made by defendants in

6   their motion to dismiss, plaintiff has not pointed to any common

7   law doctrine or statute which provides a cause of action for an

8   alleged violation of the District's law, policy, and procedure.

9   It appears to the court that plaintiff is already arguing that

10  the District violated is laws, policies, and procedures through

11  her procedural due process claims.  Although the court might

12  conceivably be able to identify a cause of action or common law

13  doctrine that would permit plaintiff to proceed on this theory

14  apart from her procedural due process claim, the court should not

15  be required to expend hours of time performing the legal research

16  to do so.  Instead, the court will dismiss this cause of action

17  for failure to adequately state a claim under Federal Rule of

18  Civil Procedure 12(b)(6) and grant plaintiff leave to amend.

19          B.   Government Claims Act

20          The District is alleged to be a "public utility

21  district" and the named defendants are alleged to be either

22  District Board Members or its public employees.  (See SAC at ¶¶

23  4-5, 9-37.)  Under the Government Claims Act, a "public entity"

24  includes districts, public agencies, and any other political

25  subdivision or political corporation in the state.  See Cal.

26  Gov't. Code § 811.2.  The District was formed pursuant to the

27  Sanitary District Act of 1923, found at California Health and

28  Safety Code § 6400, et. seq.  (See SAC at ¶¶ 4-5.)  The

1   Government Claims Act applies to sanitary districts and therefore

2   applies to the Susanville Sanitary District.  See Ambrosini v.

3   Alisal Sanitary Dist., 154 Cal. App. 2d 720, 723 (1st Dist. 1957)

4   (holding that tort liability rules applicable to municipal

5   corporations are applicable to sanitary districts).

6           The Government Claims Act establishes certain

7   conditions precedent to the filing of a lawsuit against a public

8   entity for money or damages.  See Cal. Gov't. Code § 900 et seq.

9   In order to comply with the Government Claims Act, a plaintiff

10  who files an administrative claim with a public entity must

11  either receive a notice of the claim's rejection or give the

12  entity 45 days to respond to the claim prior to the filing of any

13  lawsuit, after which the entity's inaction is deemed a rejection.

14  See Cal. Gov't. Code §§ 912.4, 945.4.  The failure to timely

15  present a claim to the public entity bars the claimant from

16  filing a lawsuit against that public entity.  See J.J. v. City of

17  San Diego, 223 Cal. App. 4th 1214, 1219 (4th Dist. 2014).[6]  A

18  plaintiff's complaint must plead facts demonstrating or excusing

19  compliance with the claims presentation requirements of the

20  California Government Claims Act to survive a motion to dismiss.

21  See State of California v. Superior Court, 32 Cal. 4th 1234, 1239

22  (2004).  Absent some exception or legal excuse, plaintiff's

23  _____

24          [6]    The failure to timely present a claim to the public
    entity also bars the claimant from filing a lawsuit against that

25  entity's public employee for an act or omission that occurred in
    the scope of employment.  See Cal. Gov't. Code § 950.2.  The

26  failure to present a claim under the Government Claims Act also
    bars allegations of "ultra vires" employment termination.  See

27  Colodney v. Cnty. of Riverside, Case No. EDCV 12-00427-VAP (SPx),
    2013 WL 12200649, at *6-7, (C.D. Cal. Aug. 16, 2013), aff'd, 651

28  F.App'x 609 (9th Cir. 2016).

1  failure to present a public entity claim under the Government

2  Claims Act to the District prior to filing suit accordingly

3  constitutes a defect to each of plaintiff's state law causes of

4  action seeking damages.

5              1.    Injunctive and Declaratory Relief

6           Plaintiff first argues that she need not comply with

7  the presentation requirements for claims for money or damages

8  because her claim is primarily one for declaratory and/or

9  injunctive relief.  (See SAC at ¶ 2.); (see Pl.'s Opp'n to Mot.

10 to Dismiss at 57.)  In Eureka Teachers Ass'n v. Board of

11 Education, 202 Cal. App. 3d 469, 475 (1st Dist. 1998), the court

12 held that the claims presentation requirement under the

13 Government Claims Act is inapplicable in "actions which seek

14 injunctive or declaratory relief and certain actions in mandamus.

15 . . . and where money is an incident thereto."  Id. at 475.

16 However, the rule exempting compliance with claims presentation

17 requirements for injunctive or declaratory relief is inapplicable

18 where a petition for extraordinary relief is merely incidental or

19 ancillary to a prayer for damages.  See Loehr v. Ventura Cmty.

20 Coll. Dist., 147 Cal. App.3d 1071, 1081 (2nd Dist. 1983).

21           Plaintiff states that "the primary purpose of this

22 action is to obtain declaratory and injunctive relief in the form

23 of an injunction returning the plaintiff to her former position,

24 and an order compelling the defendants to comply with the laws,

25 policies and contracts of the District . . ."  (See SAC at ¶ 2.)

26 Plaintiff states that her prayer for monetary damages, such as

27 back pay, and employment benefits are merely incidental to her

28 claims for equitable relief.  (See id.)  However, a fair reading

1   of the Second Amended Complaint does not support such an
2   interpretation.

3           Having reviewed plaintiff's Second Amended Complaint,
4   the court cannot conclude that plaintiff's prayer for damages is
5   "clearly incidental to her claim for injunctive and declaratory
6   relief."  See Eureka Teachers, 202 Cal. App.3d at 475.  Instead,
7   it appears that plaintiff is simply trying to bypass the
8   Government Claims Act through creative pleading.  Plaintiff
9   pleads in the alternative in each of her first six causes of
10  action that if she "is not reinstated to her employment with the
11  District, she will be entitled to an award of her lost future
12  earnings and benefits."  (See SAC at ¶¶ 175, 192, 205, 238, 260,
13  269.)  In plaintiff's fifth and sixth cause of action for
14  procedural due process violations and conspiracy to violate
15  procedural due process, which are brought under both the federal
16  and state constitutions, she claims that she is entitled to
17  damages in excess of $100,000 for "emotional distress, anxiety,
18  humiliation, and embarrassment."  (See SAC at ¶ 253.)  She also
19  seeks exemplary damages in excess of $100,000.000.  (See id. at ¶
20  254.)[7]  Plaintiff additionally seeks "general and compensatory
21  damages in sums to be proved at trial", "special damages in sums
22  to be proved at trial", and "exemplary damages in sums to be
23  proved at trial."  (See SAC at ¶ 285.)  Accordingly, plaintiff
24  has not alleged sufficient facts to show that she is exempt from

25  _____

26          [7]   Plaintiff has never specified whether these damages are
    pursuant to her federal causes of action, which are not subject
27  to the Government Claims Act, or her state causes of action.
    Instead, plaintiff has simply lumped her federal and state law
28  claims together in one cause of action.

1   compliance from the Government Claims Act on the grounds that the

2   monetary damages sought are merely incidental to declaratory or

3   injunctive relief.  Having concluded that plaintiff was compelled

4   to file a timely demand with the District as a pre-requisite to

5   initiating her lawsuit, the court must next determine whether

6   there was satisfactory compliance with the Government Claims Act.

7              2.   Actual Compliance with Government Claims Act

8              Plaintiff argues that she has actually complied with

9   the Government Claims Act "by way of various written

10  communications to the District through its General Managers, as

11  well as written and oral communications to the defendants'

12  retained legal counsel, Kevin A. Flautt." (See SAC at ¶ 38.)

13  Plaintiff contends that these communications include: (1) a

14  letter dated January 16, 2020 from plaintiff's counsel Thomas

15  Beko to General Manager Stump; (2) a letter dated February 5,

16  2020, from Thomas Beko to defendants' counsel Mr. Flautt, (3) a

17  letter dated March 30, 2020 from Thomas Beko to the defendants'

18  counsel; (4) a series of voicemail messages between Thomas Beko

19  and defendants' counsel, including three calls in February 2020;

20  (5) a series of telephone conversations between Thomas Beko and

21  defendants' counsel, including two calls in February 2020; (6) a

22  series of email communications between Thomas Beko and

23  defendants' counsel, including four between February 14, 2020 and

24  March 5, 2020; and (6) a series of correspondence between Thomas

25  Beko and defendants' counsel, including those sent by defendants'

26  counsel on January 30, 2020 and April 6, 2020.  (See id.) [8]

27  _____

28       [8]   The Government Claims Act requires that a written claim
    be presented to the public entity.  See Cal. Gov't. Code § 945.4.

1         As a preliminary matter, the court doubts that a series

2    of letters, most of which were sent to defendants' counsel, can

3    constitute a claim under the Government Claims Act.  Defendants'

4    counsel is not the proper recipient of a claim under the

5    Government Claims Act.  Rather, the Government Claims Act

6    instructs that "a claim. . . shall be presented to a local public

7    entity by either . . . delivering it to the clerk, secretary, or

8    auditor thereof" or "mailing it to the clerk, secretary, auditor,

9    or to the governing body at its principal office."  See Cal.

10   Gov't. Code § 915(a)(1–2.)

11        It is also questionable whether a series of letters can

12   ever constitute a claim within the meaning of the Government

13   Claims Act.  This is because "[i]t would be difficult for the

14   public entity to identify whether a particular letter were a

15   claim and which letter triggered its obligation to accept or deny

16   a claim if a series of correspondence could be considered

17   collectively to constitute a claim."  Dilts v. Cantua Elementary

18   School Dist., 189 Cal. App. 3d 27, 35 (5th Dist. 1987).  "If an

19   agency was unable to determine whether a claim had been filed or

20   when the claim had been filed, it would be equally difficult for

21   the court to determine which statute of limitation applied or

22   when the statute of limitation began to run."  See id.  The

23   procedures prescribed by the Government Claims Act "envisioned

24   the filing of a single claim with the public entity so that the

25   public entity may investigate the claim, consider settlement and

26

27   It goes without saying that oral communications are not a written
     claim.  See Wilhite v. City of Bakersfield, No. 1:11-CV-1692 AWI
28   JLT, 2012 WL 273088, at * 7 (E.D. Cal. Jan. 30, 2012).

1   formally approve or reject a claim." See id.

2           Nevertheless, without the ability to view the letters

3   that plaintiff contends constituted actual compliance with the

4   Government Claims Act, the court cannot determine whether those

5   letters comply with the required elements of a claim under the

6   Government Claims Act.

7           Plaintiff alternatively argues that she has actually

8   complied with the Government Claims Act through "supplemental

9   claims" presented to the District on September 2, 2020 and March

10  31, 2021.  (See SAC at ¶¶ 41-42.)  These claims were filed after

11  plaintiff initially filed this suit in August 2020 and after

12  defendants filed their first motion to dismiss their first motion

13  to dismiss on September 1, 2020.  (See Docket No. 12.)  Plaintiff

14  emphasizes that the time limits within which to submit a claim to

15  the District were tolled by way of a State of Emergency declared

16  by the Governor of California on March 4, 2020 and supplemental

17  orders thereto and that the time within which to submit a claim

18  has not expired.  (See id. at ¶¶ 43-44.)

19          Despite plaintiff's arguments, the court must conclude

20  that these "supplemental" government claims, delivered after the

21  filing of plaintiff's complaint, do not establish compliance with

22  the Government Claims Act even though the statute of limitations

23  for plaintiff to file a claim with the District had not yet run.

24  Timely claims presentation is not merely a procedural

25  requirement, but a condition precedent to the claimant's ability

26  to maintain an action against the public entity.  See Le Mere v.

27  Los Angeles Unified Sch. Dist., 35 Cal. App. 5th 237, 246 (2nd

28  Dist. 2019).  Plaintiff has not cited, nor is the court aware of

1   any cases permitting a plaintiff to "cure" her failure to file a

2   pre-lawsuit claim by filing a post-lawsuit claim.  See Le Mere.,

3   35 Cal. App. 5th at 244 (2nd Dist. 2019).  A judge in this

4   district has even held that a plaintiff's failure to present a

5   government claim prior to filing the lawsuit was fatal to his

6   state law claims, despite the fact that the plaintiff filed a

7   claim with the government entity only one day after filing the

8   lawsuit and even though plaintiff in that case had a meritorious

9   argument that the submission deadline for his claim had not

10  expired.  See McDaniel v. Diaz, Case No. 1:20-cv-00856-NONE-SAB,

11  2020 WL 7425348, *28 (E.D. Cal. Dec. 18, 2020).  This is because

12  the purpose of the Government Claims Act is not to "prevent

13  surprise [but rather] is to provide the public entity sufficient

14  information to enable it to adequately investigate claims and to

15  settle them, if appropriate, without the expense of litigation. .

16  ."  See J. J., 233 Cal. App. 4th at 1219.  As the court noted

17  in Le Mere, "[f]iling a government claim while simultaneously

18  attempting to prosecute a cause of action based on that claim. .

19  . does not satisfy the purpose of the Government Claims Act. . ."

20  See Le Mere, 35 Cal. App. 5th at 248.[9]

21          Accordingly, the court concludes that plaintiff has not

22  adequately alleged facts demonstrating compliance with the

23

24          [9]   Plaintiff's argument that the District was "fully aware
       of plaintiff's claims and allegations" is inapposite.  (See Pl.'s
25     Opp'n to Mot. to Dismiss at 55-56.)  "[I]t is well-settled that
       claims statutes must be satisfied even in the face of the public
26     entity's actual knowledge of the circumstances surrounding the
       claims. Such knowledge, standing alone, constitutes neither
27     substantial compliance nor a basis for estoppel."  See J.J., 223
       Cal. App. 4th at 1219 (internal citations omitted).

28

1  Government Claims Act.

2        3.   Notice Provisions of Government Claims Act

3             Plaintiff next contends that the defendants "never

4  provided notice to the plaintiff or her retained representatives

5  that her claims were defective or deficient in any way" and

6  argues that their failure to provide such notice waives the

7  defendants' right to assert any defense based upon the Government

8  Claims Act.  (See Compl. at ¶ 59.)  However, California

9  Government Code § 911 states that no notice regarding the

10  insufficiency of a claim "need be given and no waiver shall

11  result when the claim as presented fails to state either an

12  address to which the person presenting the claim desires notices

13  to be sent or an address of the claimant."  See Cal. Gov't. Code

14  § 911.  Because plaintiff has not attached the letters that she

15  contends constitute her compliance with the Government Claims Act

16  to her complaint, the court cannot determine whether the

17  Susanville Sanitary District was obligated to provide plaintiff

18  with notice that her claim was defective or deficient in any way.

19  Accordingly, plaintiff has not adequately alleged that the

20  Susanville Sanitary District was obligated to provide her notice

21  as to the deficiency of her claims and that the District has

22  waived any defense as to the sufficiency of plaintiff's claim

23  under the Government Claims Act.

24        4.   Estoppel

25             Plaintiff next argues that defendants should be

26  estopped from asserting the defense that plaintiff did not comply

27  with the Government Claims Act because they "failed to produce

28  records in compliance with the California Public Records Act as a

27

means by which to prevent the plaintiff from asserting claims." (See SAC at ¶ 60.)  "A public agency is subject to estoppel from the assertion of either the time limits for filing tort claims, or the statute of limitations on a cause of action."  See Jordan v. City of Sacramento, 148 Cal. App. 4th 1487, 1496 (3d Dist. 2007).  "The doctrine of equitable estoppel is based on the theory that a party who by his declarations or conduct misleads another to his prejudice should be estopped from obtaining the benefits of his misconduct."  See Kleinecke v. Montecito Water Dist., 147 Cal. App. 3d 240, 245 (2nd Dist. 1983) (internal citations omitted).  "To establish estoppel as an element of a suit, the elements of estoppel must be especially pleaded in the complaint with sufficient accuracy to disclose facts relied upon."  See Chalmers v. County of Los Angeles, 175 Cal. App. 3d 461, 467 (2nd Dist. 1985).  In order to assert equitable estoppel, the following four elements must be present:

> (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct be acted on, or must so act that the party asserting had a right to believe it was so intended; (3) the party asserting estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

See Sofranek v. Cnty. of Merced, 146 Cal. App. 4th 1238, 1247 (5th Dist. 2007).  California courts have previously found that there is no estoppel where the complaint "contains no facts about being misled or detrimental reliance."  See Chalmers, 175 Cal. App. 4th at 467.

Plaintiff's Second Amended Complaint contains no facts about being misled or detrimental reliance, as is required to

1   establish estoppel as an element of a suit.  See <u>Chalmers</u>, 175

2   Cal. App. 3d at 467.  Moreover, despite plaintiff's contention

3   that she was unable to file a government claim because of

4   defendants' alleged failure to produce certain public documents,

5   she also notes that "a presented claim need only include the

6   claimant's name and address, names of public employees involved,

7   and a description of the incident, including the date, place, and

8   proclaimed damages."  See <u>Wormuth v. Lammersville Union Sch.</u>

9   <u>Dist.</u>, 305 F. Supp. 3d 1108, 1128 (E.D. Cal. 2018) (Mueller, J.).

10  It is inconceivable that plaintiff lacked this very basic factual

11  information or that she could only have gotten this information

12  from the public records allegedly not produced by the District.

13  Accordingly, plaintiff has failed to adequately plead that

14  estoppel applies here. [10]

15       For the foregoing reasons, plaintiff's failure to

16  allege facts demonstrating or excusing compliance with the claims

17  presentation requirement of the Government Claims Act bars all

18  _____

19       [10]   Plaintiff also contends that she need not submit her
    contract-based claims to the District under the Government Claims

20  Act because (1) the district's personnel policies and its
    memorandum of understanding include a claim procedure which

21  govern this matter exclusively; (2) her claims for wages, salary,
    and fees are exempted from the presentation requirements of the

22  Government Claims Act; and (3) she substantially complied with
    the Government Claims Act's presentation requirements.  (See Pl's

23  Opp'n to Mot. to Dismiss at 60-78.)  Plaintiff did not assert
    these excuses from compliance with the Government Claims Act in

24  her Second Amended Complaint, and the California Supreme Court
    has held that plaintiff must "allege facts demonstrating or

25  excusing compliance with the claim presentation requirement"
    within the complaint itself.  See <u>State of Cal.</u>, 32 Cal. 4th at

26  1239.  Accordingly, the court will not consider these arguments
    at present but will give plaintiff leave to amend to allege the

27  facts to support these arguments in the next iteration of her
    complaint.

28

1   her state law causes of action apart from her claim under the

2   California Public Records Act.

3          C.   California Public Records Act

4              Plaintiff also contends that defendants have violated

5   the California Public Records Act ("CPRA"), Cal. Gov't. Code §

6   6250, et seq. (See SAC at ¶¶ 271-285.) The CPRA states that

7   "except with respect to public records exempt from disclosure by

8   express provisions of law, each state or local agency, upon a

9   request for a copy of records that reasonably describes an

10  identifiable record or records, shall make the records promptly

11  available to any person. . ." See Cal. Gov't. Code § 6253(b).

12  The term "public records" includes "any writing containing

13  information relating to the conduct of the public's business

14  prepared, owned, used, or retained by any state or local agency."

15  Cal. Gov't. Code § 6252(e). Section 6253(c) provides that the

16  "agency, upon request for a copy of records, shall, within 10

17  days from receipt of the request, determine whether the request,

18  in whole or in part, seeks copies of disclosable public records

19  in the possession of the agency and shall promptly notify the

20  person making the request of the determination and the reasons

21  therefor." See Cal. Gov't. Code § 6253(c).

22              Section 6258 of the CPRA provides that "[a]ny person

23  may institute proceedings for injunctive or declarative relief or

24  writ of mandate in any court of competent jurisdiction to enforce

25  his or her right to inspect or to receive a copy of any public

26  record or class of public records under this chapter." See id.

27  In order to prevail on such a petition under the CPRA, the

28  plaintiff must establish that the files requested (1) qualify as

30

1   "public records" and (2) were in the possession of the District.

2   See Consolidated Irrigation Dist. v. Superior Court, 205 Cal.

3   App. 4th 697, 709 (5th Dist. 2012.)   "The CPRA generally presumes

4   that all documents maintained by a public entity are subject to

5   disclosure to any member of the public, unless a statutory

6   exemption applies, or the catchall exemption, 6255, is satisfied

7   (when public interest served by nondisclosure of records clearly

8   outweighs the public interest in disclosure)."   See Sander v.

9   Superior Court, 26 Cal. App. 5th 651, (1st Dist. 2018). If it

10  appears from the plaintiff's verified petition that "certain

11  public records are being improperly withheld from a member of the

12  public," the court shall order the officer or person charged with

13  withholding the records to disclose the public record or show

14  cause why he or she should not do so.   See Galbiso v. Public

15  Utility Dist., 167 Cal.App.4th 1063, 1084 (5th Dist. 2008).

16      Defendants argue that plaintiff has not reasonably

17  identified what records were requested and which records have

18  still not been produced in her Second Amended Complaint.   (See

19  Mot. to Dismiss at 47.)   The court agrees.   Plaintiff attached to

20  her complaint a letter from her counsel on May 20, 2020 to

21  defendants' counsel, Kevin Flautt, requesting certain categories

22  of public records.   (See SAC at Ex. 2.)   Plaintiff also attached

23  Mr. Flautt's response on May 29, 2020, which provided anticipated

24  deadlines for when plaintiff could expect the production of

25  certain documents, ranging from June 29, 2020 to September 29,

26  2020.   (See id.)   The letter also stated that certain documents

27  might be exempt from disclosure pursuant to the CPRA and would

28  not be produced.   (See id.)   However, it is unclear to the court,

31

1   based on the letters attached to the Second Amended Complaint,

2   what documents defendants have already produced pursuant to

3   plaintiff's CPRA request and what documents have not.

4   Accordingly, plaintiff has not adequately stated a claim for

5   violation of the California Public Rights Act, and this cause of

6   action will be dismissed with leave to amend.[11]

7           IT IS THEREFORE ORDERED that the defendants' motion to

8   dismiss (Docket No. 42) be, and the same hereby is, DENIED as to

9   plaintiff's fifth cause of action under 42 U.S.C. § 1983 for

10  deprivation of procedural due process as against defendant Steve

11  J. Stump.

12          IT IS FURTHER ORDERED that defendants' motion to

13  dismiss be, and the same hereby is GRANTED as against all

14  defendants other than defendant Stump on plaintiff's fifth cause

15  of action and as against all defendants on plaintiff's first,

16  second, third, fourth, sixth, and seventh causes of action.

17          Plaintiff has twenty days from the date this Order is

18  signed to file an amended complaint, if she can do so consistent

19  with this Order.

20  Dated:  June 16, 2021

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

21

22

23

---

24  [11]    In addition to complying with the requirements to state
    a claim under the CPRA, plaintiff is instructed to explicitly
25  detail the categories of  public records and particular public
    documents sought that have not yet been produced by defendants.
26  Defendants will then have an opportunity to either produce the
    requested public documents, or explain why they believe that the
27  documents which have been identified as responsive to the
    plaintiff's CPRA request fall within one of the exemptions from
28  disclosure within the CPRA.