1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   DEBORAH STAMPFLI,                  No. 2:20-cv-01566-WBS-DMC

13                Plaintiff,

14        v.                            ORDER RE: DEFENDANTS' MOTION
                                        TO DISMISS PLAINTIFF'S THIRD
15   SUSANVILLE SANITARY DISTRICT, a    AMENDED COMPLAINT
     political subdivision of the
16   State of California; STEVE J.
     STUMP, in his individual and
17   official capacities; ERNIE
     PETERS, in his individual and
18   official capacities; DAVID
     FRENCH, in his individual and
19   official capacities; KIM ERB, in
     his individual and official
20   capacities; MARTY HEATH, in his
     individual and official
21   capacities; DOES I-V, inclusive,
     BLACK & WHITE CORPORATIONS I-V;
22   and ABLE & BAKER COMPANIES,
     inclusive,
23
                  Defendants.
24

25                          ----oo0oo----

26

27        This case is back before the court on the motion of

28   defendants District, Stump, Murray, Peters, French, Erb, and

                                  1

1  Heath to dismiss plaintiff's Third Amended Complaint.  (See Mot.

2  to Dismiss ("Mot.") (Docket No. 56).)

3  I.   Federal Claims

4       A.   Procedural Due Process

5            1.   Claim Against Stump

6            As stated in the court's previous order, because

7  plaintiff has adequately alleged a protected property interest,

8  she has stated a procedural due process claim against defendant

9  Stump.  (See Docket No. 48 at 8-11.)

10           2.   Claims Against Individual Board Members

11           Plaintiff continues to allege that the individual board

12 member defendants each "participated in the decision to terminate

13 [her] employment and/or the denial of [her] pre- and post-

14 termination rights," or, if they did not, "otherwise authorized,

15 approved, knowingly acquiesced in, and/or ratified the actions of

16 other defendants who deprived plaintiff of her constitutional

17 rights."  (See Third Amended Complaint ("TAC") at ¶¶ 42, 58, 74,

18 90, 106 (Docket No. 51).)  She further alleges that, during a

19 closed session board meeting, they "intentionally, deliberately,

20 knowingly, willfully, wantonly and in bad faith, ignored and

21 disregarded [her] rights and directed, approved, authorized,

22 acquiesced, condoned or otherwise facilitated" and "personally

23 participated" in decisions to terminate her and deny her

24 procedural protections.  (See id. at ¶¶ 232-34, 330-31.)

25           Plaintiff has also added new allegations averring that

26 each defendant board member was present at one or more meetings

27 where plaintiff's termination was discussed, were aware of

28 Stump's intention to terminate plaintiff and of documents

1  establishing her for-cause protections, and yet failed to take

2  action to prevent plaintiff's termination or to provide her with

3  pre- or post-termination procedures.  (See id. at ¶¶ 31-41, 47-

4  57, 63-73, 79-89, 95-105.)

5          Even with these updates, plaintiff's allegations still

6  contain merely conclusory factual allegations that are

7  insufficient to survive defendants' motion to dismiss, because

8  they fail to adequately allege that the defendant board members'

9  conduct proximately caused the alleged violations of plaintiff's

10  procedural due process rights.  See Crumpton v. Gates, 947 F.2d

11  1418, 1420 (9th Cir. 1991); (Docket No. 48 at 11-13).  The only

12  allegations speaking to the board defendants' role in the alleged

13  violations are the vague allegations that they "participated in"

14  relevant decisions, without saying how, and conclusory statements

15  -- unsupported by factual allegations stating any action the

16  board members took -- that they either "authorized," "approved,"

17  "acquiesced in," or "ratified" actions of other unspecified

18  defendants.  Plaintiff does not, for example, allege that the

19  board members voted to approve her termination, or even that any

20  board member voiced approval of the decision to terminate her

21  beforehand or afterwards.

22          Plaintiff cites Gomez v. Vernon, 255 F.3d 1118, 1127

23  (9th Cir. 2001), for the proposition that "[e]ven if the

24  individual Board Members had not actually voted to terminate the

25  plaintiff's employment, their failure to 'take any remedial steps

26  after the violations can indicate a deliberate choice and

27  establish an independent basis for liability.'"  (Opp. to Mot. at

28  36 (Docket No. 61).)  Although she quotes Gomez's statement that

1  a "turn[-]a-blind-eye approach does not insulate [a defendant]"

2  from liability for failing to take remedial action, (id.), she

3  omits critical statements that immediately follow: that in Gomez,

4  the district court had made detailed factual findings showing

5  that "the retaliatory acts were condoned by the [defendant]

6  officials, sufficient to make clear to officers they could get

7  away with anything," 255 F.3d at 1127 (quotation marks omitted,

8  alterations adopted).  There are no allegations to support a

9  comparable theory in this case.[1]

10      Because plaintiff has not demonstrated that the

11  individual board members had a duty to intervene to protect

12  plaintiff from a violation of her procedural due process rights,

13  and the Third Amended Complaint has not adequately alleged

14  personal involvement by the defendant board members, it fails to

15  state individual § 1983 claims against them.  Accordingly, the

16  court will dismiss plaintiff's due process claims against the

17  defendant board members.

18          3.   Claims Against the District

19      Because § 1983 does not provide for vicarious

20  liability, a local government "may not be sued under § 1983 for

21

22      [1]   Plaintiff also cites a number of Ninth Circuit
    decisions "recogniz[ing] that members of a council or board may
23  be held individually liable for their conduct even when they act
    by way of a majority vote."  (See Opp. to Mot. at 35 (Docket No.
24  61) (citing Navarro v. Block, 250 F.3d 729, 734 (9th Cir. 2001);
    Trevino v. Gates, 23 F.3d 1480, 1482-83 (9th Cir. 1994); Heller
25  v. Bushey, 759 F.2d 1371, 1375 (9th Cir. 1985), rev'd on other
    grounds, 475 U.S. 796 (1986); Cinevision Corp. v. City of
26  Burbank, 745 F.2d 560, 579-80 (9th Cir. 1984)).)  However,
    because plaintiff has not alleged that a majority of the board
27  member defendants -- or any -- voted to terminate her or deny her
    pre- or post-termination review, these decisions are inapposite.
28

4

1  an injury inflicted solely by its employees or agents."  Monell

2  v. Dept. of Soc. Servs. of the City of N.Y., 436 U.S. 658, 694

3  (1978).  "Instead, it is when execution of a government's policy

4  or custom, whether made by its lawmakers or by those whose edicts

5  or acts may be fairly said to represent official policy, inflicts

6  the injury that the government as an entity is responsible under

7  § 1983."  Id.  That particular challenged acts "may be fairly

8  said to represent official policy," thereby demonstrating the

9  existence of a § 1983 claim for municipal liability, may be shown

10  in several ways relevant to plaintiff's allegations.

11              a.    Direct Municipal Action

12        "[M]unicipalities may be held liable . . . for acts for

13  which the municipality itself is actually responsible, 'that is,

14  acts which the municipality has officially sanctioned or

15  ordered.'"  City of St. Louis v. Praprotnik, 485 U.S. 112, 123

16  (1988) (plurality opinion) (quoting Pembaur v. Cincinatti, 475

17  U.S. 459, 480 (1986)).  Actions of individual municipal officials

18  may be said to represent official policy, but only as to

19  "officials who have final policymaking authority," and whether a

20  particular official has such authority "is a question of state

21  law."  Id. (emphasis omitted) (quoting Pembaur, 475 U.S. at 483

22  (plurality opinion)[2]).

23        Because the Third Amended Complaint fails to adequately

24  allege personal participation by the defendant board members, as

25  explained above, it likewise fails to adequately allege that

26  _____

27        [2]    A majority of justices joined the Supreme Court's
    opinion in Pembaur, except as to section II.B of that opinion.

28  See 475 U.S. at 471.  Where that section is cited in this order,
    the court has noted this distinction.

1   their involvement amounted to a "formal decision[ ]" that would

2   render any alleged constitutional violations attributable to the

3   District itself.  Cf. Gomez, 255 F.3d at 1127 ("[A] policy-

4   maker's pronouncement that he has not or will not discipline

5   officers that retaliated against prison litigators is sufficient

6   evidence of a policy or custom . . . .").  Accordingly, it fails

7   to state a claim for municipal liability under this theory.

8                    b.   Ratification

9        "[W]hen a subordinate's decision is subject to review

10  by the municipality's authorized policymakers," who "approve a

11  subordinate's decision and the basis for it, their ratification

12  would be chargeable to the municipality because their decision is

13  final." Praprotnik, 485 U.S. at 127; see also Clouthier v. Cnty.

14  of Contra Costa, 591 F.3d 1232, 1250 (9th Cir. 2010) (recognizing

15  same), overruled on other grounds by Castro v. Cnty. of Los

16  Angeles, 833 F.3d 1060, 1070 (9th Cir. 2016).  The complaint must

17  adequately allege "a conscious, affirmative choice on the part of

18  the authorized policymaker." Clouthier, 591 F.3d at 1250

19  (citation and internal quotation marks omitted).

20       Because the Third Amended Complaint does not contain

21  sufficient, nonconclusory factual allegations to allege that any

22  of the defendant board members made any "conscious, affirmative

23  choice" to approve Stump's termination of plaintiff or to ratify

24  any decision to deny her procedural protections, it fails to

25  state a claim for municipal liability under this theory as well.

26                    c.   Delegation

27       Finally, plaintiff alleges that the board delegated the

28  relevant final policymaking authority to General Manager Stump,

6

1   such that his alleged violations of her procedural due process

2   rights are attributable to the District and thus may support a

3   Monell claim.  (See TAC at ¶¶ 11-28, 111-12, 332; Exs. 1, 2

4   (Docket Nos. 51, 51-1, 51-2).)  In support of this theory,

5   plaintiff relies on a District ordinance and resolution attached

6   to the Third Amended Complaint, which she argues demonstrate that

7   Stump, as General Manager, had been delegated the relevant final

8   policymaking authority.  (See TAC, Exs. 1, 2 (Docket Nos. 51-1,

9   51-2); Opp. to Mot. at 37-39 (Docket No. 61)); see also Pembaur,

10  475 U.S. at 483 (plurality opinion) ("[W]hether an official had

11  final policymaking authority is a question of state law.").

12          The ordinance and resolution, in fact, more clearly

13  demonstrate that such a delegation had not occurred, and that the

14  board retained final policymaking authority on relevant matters.

15  (See Mot. at 11-13 (Docket No. 56).)  District Ordinance No. 17

16  is titled "An Ordinance . . . Establishing A Personnel System,"

17  Section 2 of which designates the "District Manager"[3] as the

18  District's "Personnel Officer."  (TAC, Ex. 1 (Docket No. 51-1).)

19  It goes on to describe the Personnel Officer's duties, including

20  "[a]dminister[ing] . . . provisions of this ordinance and of the

21  personnel rules"; "[p]repar[ing] and recommend[ing] to the

22

23          [3]   The complaint also refers to the "District General
    Manager," suggesting that "District Manager" and "General
24  Manager" are the same position.  (See TAC at ¶ 18 (Docket No.
    51).)  Resolution No. 04.06, plaintiff's second exhibit, refers
25  to the "District General Manager" as well, which further supports
    this notion, (see TAC, Ex. 2 (Docket No. 51-2)), though
26  defendants suggest that they are different positions, (see Mot.
    at 11 n.6 (Docket No. 56)).  However, construing the complaint in
27  the light most favorable to plaintiff, the court will assume they
    are the same for purposes of the instant motion.
28

                                    7

1   District Board personnel rules and revisions"; "[p]repar[ing]

2   . . . a position classification plan," which "shall become

3   effective upon approval by the District Board"; and

4   "[p]repar[ing] . . . a plan of compensation," which likewise

5   "shall become effective upon approval by the District Board."

6   (Id. (emphasis added).)  Section 4 of the Ordinance provides that

7   "Personnel Rules shall be adopted by resolution of the District

8   Board," and Section 5 provides that "[a]ll [personnel]

9   appointments shall be made by the District Manager, and ratified

10  by the District Board."  (Id. (emphasis added).)

11        All of these provisions clearly operate to constrain

12  the District Manager's authority respecting personnel rules and,

13  in many cases, specifically provide that the District Manager's

14  choices and recommendations respecting rules and other matters

15  relating to personnel are subject to the board's approval.[4]  As

16  plaintiff acknowledges, case law makes clear that where an

17  official's decision respecting a particular issue is reviewable

18  by another official or official body with greater authority, the

19  subordinate official cannot be deemed a final policymaker with

20  respect to that issue.  (See Opp. to Mot. at 39 (Docket No. 61)

21  (citing King v. Garfield Cnty. Pub. Hosp. Dist. No. 1, 2:12-cv-

22  0622-TOR, 2016 WL 3566218, at *7 (E.D. Wash. June 27, 2016),

23  aff'd sub nom. King v. McGee, 739 F. App'x 864 (9th Cir. 2018)));

24  see also Praprotnik, 485 U.S. at 127-29 ("[W]hen a subordinate's

25  decision is subject to review by the municipality's authorized

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27        [4]   The body of the complaint cites these documents, and
    accordingly uses the same or similar language to describe the
    General Manager's responsibilities concerning personnel

28  management.  (See TAC at ¶¶ 12-16 (Docket No. 51).)

1   policymakers, they have retained the authority to measure the

2   official's conduct for conformance with <u>their</u> policies.").

3          Likewise, Resolution No. 04.06 states that "the Board

4   of Directors is the body within the District empowered and

5   charged with the adoption of policies," (TAC, Ex. 2 (Docket No.

6   51-2)), indicating that the board, not the General Manager, is

7   the final policymaker with respect to "promulgat[ion of] policies

8   and procedures," (Opp. to Mot. at 39 (Docket No. 61)).  Although

9   the resolution also directs the General Manager to "adopt an

10  employee discipline policy and procedure . . . in coordination

11  with District Counsel," it goes on to clarify that these "shall

12  conform to the policies and tenets" outlined in detail in an

13  attached exhibit.  (TAC, Ex. 2 (Docket No. 51-2).)  This makes

14  clear that the District, not the General Manager, dictated the

15  terms of employee discipline policies and procedures and thus

16  retained final policymaking authority as to that issue.

17          Plaintiff points to Section 8 of Ordinance No. 17,

18  which provides that "[t]he District Manager shall have the right,

19  for due cause, to demote, dismiss, reduce in pay, or suspend

20  without pay for thirty calendar days, any permanent employee."

21  (TAC, Ex. 1 (Docket No. 51-1).)  The relevant inquiry, however,

22  is whether Stump had been delegated final <u>policymaking</u> authority

23  over relevant matters and, if so, whether a final <u>policy</u> he

24  created caused a deprivation of plaintiff's rights.  See <u>Monell</u>,

25  436 U.S. at 694 (municipal liability exists only "when execution

26  of a government's policy or custom . . . inflicts the injury");

27  <u>Pembaur</u>, 475 U.S. at 483 (plurality opinion) ("Authority to make

28  municipal policy . . . may be delegated by an official who

1    possesses such authority.").  Plaintiff's suggestion that

2    discretionary authority to make individual personnel decisions is

3    sufficient is therefore unavailing; rather, authority to create

4    final policy governing those decisions is what is required.

5            Further, throughout the Third Amended Complaint,

6    plaintiff repeatedly acknowledges that dismissals of permanent

7    employees are subject to pre- and post-termination review -- the

8    crux of her procedural due process claim -- per the board's own

9    duly adopted policies and procedures.  (See, e.g., TAC at 37, 41,

10   331 (Docket No. 51) (citing Resolution No. 04.06 (Docket No. 51-

11   2)).)  These allegations confirm that any of the General

12   Manager's disciplinary decisions, including dismissal, were

13   subject to review before becoming final; as Praprotnik makes

14   clear, this means the General Manager was not a final policymaker

15   as to hiring and firing decisions.  See 485 U.S. at 127-29.[5]

16           For the foregoing reasons, the court concludes that the

17   Third Amended Complaint, incorporating exhibits 1 and 2, still

18   fails to sufficiently allege that Stump was a final policymaker

19   with respect to the due process violations plaintiff alleges.

20   The court will therefore grant defendants' motion to dismiss

21           [5]    Section 9 of Ordinance No. 17, which reserves for "the
22   District Board [the ability to] abolish any position or
     employment" in the District," (see TAC, Ex. 1 (Docket No. 51-1)),
23   provides further support for the conclusion that the board, not
     the General Manager, is the final policymaker respecting the
24   management of District positions and staffing.
             Further, as noted, plaintiff argues that Stump had
25   final authority "to hire and fire employees."  (Opp. to Mot. at
     39 (Docket No. 61).)  However, Ordinance No. 17, which states
26   that "[a]ll appointments shall be made by the District Manager[ ]
27   and ratified by the District Board," (TAC, Ex. 1 (emphasis added)
     (Docket No. 51-1)), makes clear that the District Manager lacked
28   final authority as to hiring as well.

                                  10

1   plaintiff's procedural due process claim under § 1983 as against

2   the District.

3         B.   Conspiracy to Deprive Procedural Due Process

4              Because, as previously noted, the Ninth Circuit has

5   made clear that "conspiracy is not itself a constitutional tort

6   under § 1983," (Docket No. 48 at 17 (quoting Lacey v. Maricopa

7   County, 693 F.3d 896, 935 (9th Cir. 2012) (en banc))), and

8   because plaintiff has added no allegations to her complaint

9   bearing on this point, the court will grant defendants' motion to

10  dismiss the Third Amended Complaint's conspiracy claim.

11  V.    State Law Claims

12        A.   Violation of District Law, Policy, and Procedure

13             Plaintiff has styled her fourth cause of action as

14  "Violation of District Law, Policy, and Procedure."  (See TAC at

15  ¶¶ 288-322 (Docket No. 51.)  Although plaintiff cites no statute

16  providing for such a cause of action, she cites two California

17  Court of Appeal decisions, Read v. City of Lynwood, 173 Cal. App.

18  3d 437, 442-43 (2d Dist. 1985), and Summers v. City of Cathedral

19  City, 225 Cal. App. 3d 1047, 1065-66 (4th Dist. 1990), in

20  contending that "an employee who is terminated in violation of

21  the employer's own laws or regulations has a valid claim for

22  relief against the employer."  (TAC at ¶ 290 (Docket No. 51).)

23             After Read was decided by the California Court of

24  Appeal, however, that court has repeatedly disapproved of the

25  decision.  See Kemmerer v. Cnty. of Fresno, 200 Cal. App. 3d

26  1426, 1434 (5th Dist. 1988), disapproved of on other grounds by

27  Quigley v. Garden Valley Fire Protection Dist., 7 Cal. 5th 798,

28  814 (2019); Hill v. City of Long Beach, 33 Cal. App. 4th 1684,

1   1692 n.11 (2d Dist. 1995); see also Trevino v. Lassen Mun.

2   Utility Dist., 2:07-cv-02106-LKK-DAD, 2008 WL 269087, at *7 (E.D.

3   Cal. Jan. 29, 2008) (recognizing disapproval).

4          Further, the relevant portion of Summers -- which

5   relied on Read -- is most clearly read to stand for the

6   proposition that California's rule against contracts restricting

7   terminations of public employment does not preclude assertion of

8   other causes of action that may exist based on a municipality's

9   violation of its own laws.  See Summers, 255 Cal. App. 3d at

10  1065.  But this proposition, in and of itself, does not establish

11  a separate cause of action by which public employees may sue for

12  alleged rules violations.

13         In Retired Employees Association of Orange County, Inc.

14  v. County of Orange, 52 Cal. 4th 1171, 1176 (2011), the only

15  other case which could remotely support plaintiff's theory, the

16  California Supreme Court held merely that, absent a legislative

17  prohibition, "a California county and its employees [may] form an

18  implied contract that confers vested rights to health benefits on

19  retired county employees."  Nowhere does it articulate a

20  generalized cause of action against municipalities for violations

21  of their own laws or regulations, or even a more limited one in

22  the employment termination context.

23         Because plaintiff has failed to identify a valid cause

24  of action or common law doctrine that would permit plaintiff to

25  proceed on this theory apart from her procedural due process

26  claim, the court will dismiss this cause of action for failure to

27  state a claim under Federal Rule of Civil Procedure 12(b)(6).

28         B.   Government Claims Act

1    Defendants again argue that plaintiff's failure to

2  present a public entity claim under the Government Claims Act

3  (the "Act") to the District prior to filing suit constitutes a

4  fatal, incurable defect to each of plaintiff's state law causes

5  of action seeking damages.  (See Mot. at 18-28 (Docket No. 56).)

6              1.   Injunctive and Declaratory Relief

7    As before, plaintiff argues she need not comply with

8  the presentation requirements for claims seeking money damages

9  because hers is primarily one for declaratory and/or injunctive

10 relief.  (See TAC at ¶ 2 (Docket No. 51).)  However, the court

11 has previously concluded plaintiff is not entitled to this

12 exemption because her prayer for damages is not "clearly

13 incidental to her claim for injunctive and declaratory relief,"

14 given the extensive compensatory and punitive damages she seeks,

15 (see Docket No. 48 at 22-23), and plaintiff does not appear to

16 have altered her requested relief in her Third Amended Complaint.

17             2.   Fees, Salaries, and Wages

18   As before, plaintiff argues that her claims, to the

19 extent they seek compensation for unused earned sick and personal

20 leave, are exempted from these requirements pursuant to one of

21 the Act's statutory exceptions, which exempts "[c]laims by public

22 employees for fees, salaries, wages, mileage, or other expenses

23 and allowances" from presentation.  (Opp. to Mot. at 57-58

24 (boldface omitted) (Docket No. 61)); Cal. Gov. Code § 905(c).

25 This argument is identical to that presented in plaintiff's

26 previous opposition, (see Docket No. 44 at 75-76), which the

27 court addressed in its previous order, stating that because

28 plaintiff had not sufficiently alleged excuse from compliance

1   with the presentation requirement in her complaint, the court

2   could not credit her argument on that point, (see Docket No. 48

3   at 29 n.10).  Although the court specified that it would give

4   plaintiff leave to amend her complaint to add allegations in

5   support of this argument, (see id.), she does not appear to have

6   done so in the Third Amended Complaint, (see TAC (Docket No.

7   51)).

8              3.   Actual Compliance with Government Claims Act

9              Plaintiff contends she has complied with the Act's

10  presentation requirements "by way of various written

11  communications to the District through its General Managers, as

12  well as written and oral communications to the defendants'

13  retained legal counsel, Kevin A. Flautt."  (See TAC at ¶ 116

14  (Docket No. 51).)  In response to the court's previous order,

15  plaintiff has attached four of the written communications as

16  exhibits.  (See TAC, Exs. 3-6 (Docket Nos. 51-3, 51-4, 51-5, 51-

17  6).)  Although the oral communications referenced in the Third

18  Amended Complaint have not been provided, it goes without saying

19  that oral communications are not a written claim, as required by

20  the Act.  See Wilhite v. City of Bakersfield, No. 1:11-CV-1692

21  AWI JLT, 2012 WL 273088, at *7 (E.D. Cal. Jan. 30, 2012).

22             As for the written communications, as stated in the

23  court's prior order, a series of letters, taken collectively,

24  cannot constitute a "claim" within the meaning of the Government

25  Claims Act.  (See Docket No. 48 at 24-25.)[6]  Accordingly, the

26  _____

27        [6]    As previously stated, any "supplemental claims"
    plaintiff presented to the District after filing this suit and
    after defendants filed their first motion to dismiss cannot
28  establish compliance with the Act.  (See Docket No. 48 at 25-26.)

1    court looks to the one most relevant letter to evaluate its

2    compliance with the act.   Plaintiff alleges that, in a letter,

3    the District "denied all the plaintiff's claims."  (TAC at ¶ 123,

4    Ex. 6 (Docket Nos. 51, 51-6).)  That letter responded directly to

5    a letter from plaintiff's counsel dated March 30, 2020, attached

6    to the complaint at Exhibit 3, which thus appears to represent

7    the most relevant letter for the court to evaluate.

8         The March 30 letter plainly fails to adhere to the

9    Act's enumerated requirement for a claim.  Although it includes

10   plaintiff's counsel's mailing address, it does not include "[t]he

11   . . . post office address of the <u>claimant</u>," any "[monetary]

12   amount claimed," or "whether the claim would be a limited civil

13   case."  Cal Gov. Code §§ 910(a),(f) (emphasis added); (<u>see</u> TAC,

14   Ex. 3 (Docket No. 51-3)); <u>see also</u> <u>Olson v. Manhattan Beach</u>

15   <u>Unified Sch. Dist.</u>, 17 Cal. App. 5th 1052, 1061 (2d Dist. 2017)

16   (holding claim failed to substantially comply with Act's

17   presentation requirements where it "d[id] not contain the address

18   of the claimant" or "the dollar amount claimed or whether the

19   claim would be a limited civil case").

20        Indeed, the contents of the letter do nothing to make

21   clear that it is intended to function as a claim at all.  Rather,

22   it states that "Ms. Stampfli wishes to reserve and utilize any

23

24        Further, "it is well-settled that claims statutes must
     be satisfied even in the face of the public entity's actual
25   knowledge of the circumstances surrounding the claims.  Such
     knowledge, standing alone, constitutes neither substantial
26   compliance nor a basis for estoppel."  <u>See</u> <u>J.J. v. City of San</u>
     <u>Diego</u>, 223 Cal. App. 4th 1214, 1219 (4th Dist. 2014) (internal
27   citations omitted).  Plaintiff's arguments to the contrary are
     therefore unavailing.
28

1    and all rights and duties which may stem from binding union

2    contracts or collective bargaining agreements," and "request[s]

3    that she be afforded any and all appeal or review rights

4    available."  (TAC, Ex. 3 (Docket No. 51-3).)  It further "demands

5    . . . proper procedural and substantive due process," including

6    "notice of the reason for the deprivation of [plaintiff's] rights

7    (disciplinary actions, including suspension and termination), as

8    well as an opportunity to provide a response that would be

9    afforded meaningful consideration."  (Id.)  It goes on to state

10   that, "[f]inally, Ms. Stampfli wishes to initiate any informal

11   and/or formal grievance procedures at this time."  (Id.)

12        Nowhere does the letter indicate plaintiff sought

13   monetary compensation, yet section 910 and precedent construing

14   it make clear that a "claim" under the Act is necessarily a

15   monetary claim.  See Cal. Gov. Code § 910(f) (requiring that a

16   claim include "[t]he amount claimed"); Loehr v. Ventura Cnty.

17   Comm. Coll. Dist., 147 Cal. App. 3d 1071, 1082-84 (2d Dist. 1983)

18   (noting that, although the substantial compliance doctrine may

19   apply when a claim is defective, it "cannot cure total omission

20   of an essential element from the claim," and that plaintiff's

21   claim was fatally defective in part because "[n]owhere in the

22   letter is there a claim for money damages, nor, for that matter

23   . . . even an estimate of the amount of any prospective injury,

24   damage or loss") (citing Cal. Gov. Code §§ 910, 945.4)).

25        Because the operative letter did not comply with the

26   Government Claims Act's requirements, plaintiff has not alleged

27   facts demonstrating compliance with the Act.

28             4.   Notice Provisions of Government Claims Act

16

1    Plaintiff argues that defendants' right to assert a

2  defense based on the Act is waived because "defendants never

3  provided notice to the plaintiff or her retained representative

4  that her claims were defective or deficient in any way."  (TAC at

5  ¶ 141 (Docket No. 51)); see Cal. Gov. Code § 911.  As noted,

6  however, the March 30, 2020 letter does nothing to identify

7  itself as a claim or otherwise indicate that plaintiff sought

8  financial compensation, as a claim must.  Rather, it identified

9  itself as a request for "appeal or review" and to "initiate . . .

10 grievance procedures."  (See TAC, Ex. 3 (Docket No. 51-3).)

11 There was thus no reason the District would have recognized a

12 need to notify plaintiff of the letter's insufficiency as a claim

13 within the meaning of the Act, as the letter did not purport to

14 be one nor was it recognizable as such.  Accordingly, the

15 District has not waived its sufficiency defense.

16          5.  Contract-Based Exemptions

17    Finally, plaintiff argues that she is exempted from the

18 Act's presentation requirements as to her contract-based claims

19 pursuant to Government Code sections 930 and 930.4.  (See Opp. to

20 Mot. at 57-59 (Docket No. 61).)  However, "as a matter of

21 [California] law, there can be no express or implied-in-fact

22 contract between plaintiff and [her public employer] which

23 restricts the manner or reasons for termination of his

24 employment."  See Summers, 225 Cal. App. 3d at 1066 (citing,

25 inter alia, Miller v. California, 18 Cal. 3d 808, 813 (1997)

26 ("[I]t is well settled in California that public employment is

27 not held by contract but by statute and that, insofar as the

28 duration of such employment is concerned, no employee has a

17

1   vested contractual right to continue in employment beyond the

2   time or contrary to the terms and conditions fixed by law."), and

3   Humbert v. Castro Valley Cnty. Fire Prot. Dist., 214 Cal. App. 2d

4   1, 13 (1st Dist. 1963) (applying rule in context of special

5   municipal districts)).

6          Accordingly, this exemption does not apply, and

7   plaintiff's state law claims in counts one, two, and three of the

8   Third Amended Complaint must be dismissed.

9          C.   California Public Records Act

10         The court previously directed plaintiff "to explicitly

11  detail the categories of public records and particular public

12  documents sought that have not been produced by defendants," (see

13  Docket No. 48 at 32 n.11), and she has since updated her

14  complaint to include a ten-item list describing the categories of

15  records sought, (see TAC at ¶ 364 (Docket No. 51)).  Defendants

16  dispute these allegations.  (See Docket No. 58.)  Yet, because on

17  a motion to dismiss the court must take plausible and well-

18  pleaded facts alleged in the complaint as true, see Navarro v.

19  Block, 250 F.3d 729, 732 (9th Cir. 2001), the court will credit

20  plaintiff's allegations at this stage and thus will deny

21  defendants' motion as to plaintiff's Public Records Act claim.[7]

22         IT IS THEREFORE ORDERED that defendants' motion to

23  dismiss plaintiff's Third Amended Complaint, insofar as it seeks

24  dismissal of plaintiff's procedural due process claim against

25         [7]   The court notes, however, that it does not look

26  favorably upon unfounded factual allegations.  Accordingly, to
    the extent that defendants dispute these allegations' accuracy,

27  the court hopes that plaintiff is correct.  See Fed. R. Civ. P.
    11(b)(3).

28

defendant Stump in his individual capacity (count five), and of her California Public Records Act claim (count seven), be, and hereby is, DENIED;

AND IT IS FURTHER ORDERED that in all other respects, defendants' motion be, and hereby is, GRANTED.[8]

Dated:   December 10, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[8]   In her opposition, plaintiff has not sought additional leave to amend her complaint. (See Opp. to Mot. (Docket No. 61).)  Further, plaintiff has been given leave to amend her complaint three times already.  She may not do so indefinitely. Accordingly, the court does not grant plaintiff leave to file a Fourth Amended Complaint.

19