UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DEBORAH STAMPFLI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SUSANVILLE SANITARY DISTRICT, a political subdivision of the State of California; STEVE J. STUMP, in his individual and official capacities; JOHN MURRAY, in his individual and official capacities; ERNIE PETERS, in his individual and official capacities; DAVID FRENCH, in his individual and official capacities; KIM ERB, in his individual and official capacities; MARTY HEATH, in his individual and official capacities; DOES I-V, inclusive; BLACK & WHITE CORPORATIONS I-V; and ABLE & BAKER COMPANIES, inclusive,<br><br>Defendants. | No. 2:20-cv-01566 WBS DMC<br><br>MEMORANDUM AND ORDER RE: DEFENDANT STEVE J. STUMP'S MOTION FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff Deborah Stampfli brought this action

1

containing numerous claims against the Susanville Sanitary District ("District"), Steve J. Stump, John Murray, Ernie Peters, David French, Kim Erb, Marty Heath, Black & White Corporations I-V, Able and Baker Companies, and Does 1-5 inclusive.

The court previously issued three orders on separate motions to dismiss, dismissing most of plaintiff's claims. (See Docket Nos. 34, 48, 66.) All that remains are plaintiff's fifth claim, alleging deprivation of procedural due process under the Fourteenth Amendment by Steve J. Stump, and seventh claim, alleging failure to produce public records by the District, from the Third Amended Complaint. (See Third Am. Compl. ¶¶ 333-34, 365-68; Order on Mot. to Dismiss Third. Am. Compl. (Docket No. 66) at 18-19.) Defendant Steve J. Stump now moves for summary judgment on plaintiff's fifth claim on the sole ground of qualified immunity. (Def. Steve J. Stump's Mot. for Summ. J. ("Mot.") (Docket No. 72).) Plaintiff opposes the motion and cross-moves for partial summary judgment establishing that plaintiff was not an at-will employee. (Pl.'s Suppl. Opp'n (Docket No. 102).)[1]

I. Facts

The District hired plaintiff as Treasurer in 2005. (Decl. of Susan Stampfli ("Stampfli Decl.") (Docket No. 81-3) ¶ 18.) At the time of her hiring, plaintiff became a member of Operating Engineers Local Union No. 3. (Id. ¶ 18.) Agreements between the union and the District established a number of

---

[1] Contrary to defendant's argument, plaintiff complied with the timing requirements for filing a cross-motion under the Local Rules. See L.R. 230(e).

2

protections for union members, including the right to continued employment and termination only for good cause and after the satisfaction of procedural requirements. (Decl. of Art Frolli (Docket No. 102-7) ¶¶ 2-3.) From 2005 to 2013, plaintiff performed her assigned duties and a host of additional duties typically performed by supervisory personnel, and consistently received high performance evaluations. (<u>See</u> Stampfli Decl. ¶ 19; Decl. of Randy O'Hern ("O'Hern Decl.") (Docket No. 102-4) ¶ 5.)

By October 2013, plaintiff was performing many management and administrative functions but, because she was a union member, she could not participate in confidential meetings of the District's Board of Directors ("the Board"). (Stampfli Decl. ¶ 19.) Her inability to participate in these meetings was inconvenient because the Board frequently had to stop meetings or delay them to obtain information possessed only by plaintiff. (<u>Id.</u>) Because of these difficulties, the Board proposed the creation of a new management level position, entitled "Office Administrator," which would allow plaintiff to participate in confidential board meetings but would require her to relinquish her union membership. (<u>Id.</u> ¶ 21.)

When plaintiff was offered this new position, she declined it because she did not wish to lose the job security offered by her union affiliation. (<u>Id.</u> ¶ 22.) In response to her concerns, plaintiff was advised by the General Manager and the District's General Counsel that although she could not remain a union member, plaintiff would not become an at-will employee and would be afforded all the job security rights and benefits

3

available to union members.  (Id. ¶ 24; Decl. of Jaimee Jones ("Jones Decl.") (Docket No. 102-2) ¶ 6.)  Plaintiff was promised that her employment with the District would only be terminated for cause and in accordance with established Skelly procedures.[2] (See Stampfli Decl. ¶ 24; Jones Decl. ¶ 6.)  Based on these representations, plaintiff relinquished her position as Treasurer and accepted the new position of Office Administrator.  (Stampfli Decl. ¶ 25.)

During 2017, plaintiff performed many duties typically performed by the General Manager, a position held at that time by Randy O'Hern.  (Id. ¶ 30.)  In October 2017, General Manager O'Hern recommended to the Board that plaintiff be provided a 20% salary increase to account for the additional duties she performed and that she receive the additional title of Assistant General Manager.  (Id. ¶ 34; O'Hern Decl. ¶ 14.)  O'Hern presented his proposal for the title change and salary increase to the Board at a board meeting on October 10, 2017.  (O'Hern Decl. ¶ 17.)  During the meeting, O'Hern described plaintiff as an "at-will" employee and explained that in the new proposed position, she would "serve at the pleasure of the Board and the new hire."  (Id. ¶ 19.)  The official meeting minutes, which were signed by plaintiff, memorialize O'Hern's comment that plaintiff was "at will."  (Minutes of Adjourned Regular Meeting of the Bd.

---

[2]  "Skelly procedures" refers to the case Skelly v. State Personnel Bd., 15 Cal. 3d 194 (1975).  In Skelly, the California Supreme Court held that an employer cannot take away a permanent public employee's property rights (i.e., their vested right to continued employment) without certain procedural safeguards.  See id. at 215.

of Directors, Oct. 10, 2017 ("Oct. 10, 2017 Minutes") (Docket No. 81-6) at 139-2-483.)   Following a discussion of the proposal, the Board approved a motion to "change [plaintiff's] title to include Assistant General Manager with a 20% salary increase effective October 1, 2017."  (Id. at 140-1-117.)

Plaintiff knew that there might come a time when the new General Manager no longer needed her assistance in performing the duties and functions of General Manager, and states that she was led to believe that if this change occurred, she would be relieved of any additional Assistant General Manager duties, but would continue to perform all the functions she previously performed as Office Administrator.  (Stampfli Decl. ¶ 39.) Plaintiff states that she was never told that her position as Office Administrator had been converted to a position terminable at will or that she could summarily be deprived of her permanent position as Office Administrator.  (Id.)

In March 2018, the District hired defendant Steve Stump to the position of probationary General Manager.  (Decl. of Steve Stump ("Stump Decl.") (Docket No. 72-2) ¶ 1.)  Plaintiff contends that following the completion of defendant Stump's probationary period, he became increasingly hesitant to work in conjunction with her.  (Stampfli Decl. ¶ 46.)

In April 2019, defendant Stump wanted plaintiff to shift funds from various accounts to allow for the purchase of a portable generator.  (Id. ¶¶ 49-50.)  Given plaintiff's instructions from several board members regarding the financial affairs of the District, she requested that defendant Stump delay

5

this purchase until after a new budget for 2020 was created or seek approval from the Board for the purchase. (Id. ¶ 50.) On or about January 8, 2020, defendant Stump directed plaintiff to have financial computer programs placed on his office computer. (Id. ¶ 54.) Plaintiff told defendant Stump that she wished to meet with certain board members to determine whether it was necessary for the programs to be placed on his computer. (Id. ¶¶ 55-56.)

On January 9, 2020, defendant Stump placed plaintiff on unpaid administrative leave. (Stump Decl. ¶ 5.) On January 13, 2020, defendant Stump sent plaintiff a text message offering to allow plaintiff to return to work if she promised not to be insubordinate to him. (Id. ¶ 6.) Plaintiff did not respond to the text message. (Id.) On January 14, 2020, defendant Stump informed plaintiff that her administrative leave would be paid, but not the reason she was placed on leave. (Stampfli Decl. ¶ 59.) On March 6, 2020, defendant Stump sent plaintiff a letter releasing her from her "at-will" employment as Office Administrator/Assistant General Manager. (Stump Decl ¶ 12.) Plaintiff was never afforded an appeal process or other procedural safeguards. (See Stampfli Decl. ¶¶ 60-62; Stump Decl. ¶¶ 12-13.)

II. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may move for summary judgment either for one

6

or more claims or defenses, or for portions thereof.  Id.  Where a court grants summary judgment only as to a portion of a claim or defense, it "may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case."  Id. at 56(g).

III. Discussion

Defendant moves for summary judgment solely on the basis that he is entitled to qualified immunity.  Plaintiff argues that defendant is not entitled to qualified immunity and cross-moves for partial summary judgment establishing that she was not an at-will employee.  The court will first address plaintiff's cross-motion.

A.   Plaintiff's Employment Status

Under multiple employment policies promulgated by the District, plaintiff was dismissible only for cause and in accordance with Skelly procedures.  (See Resol. 4.06 (Docket No. 81-11) at Ex. A, § 1; Ordinance No. 17 (Docket No. 81-9) § 8; Admin. Policies Manual (Docket No. 81-13) at 26.[3])  Additionally, according to O'Hern and then-General Counsel Jaimee Jones, the District promised plaintiff that she would continue to receive the rights afforded to union members (including for-cause and procedural due process protections) despite plaintiff forfeiting her union membership when she received the Office Administrator

---

[3] The Administrative Policies Manual establishes Skelly rights for "permanent" employees, i.e., employees who had completed their probationary period.  See Admin. Policies Manual at 6, 26.  Plaintiff, as an employee of the District for over fourteen years, was clearly a permanent employee, which defendant does not seem to dispute.

7

position. (See O'Hern Decl. ¶ 9; Jones Decl. ¶ 6; Minutes of Adjourned Regular Meeting of the Bd. of Dirs., Oct. 8, 2013 (Docket No. 102-18) at 114-1-368 to 114-1-383.) By virtue of these rights, plaintiff was not an at-will employee. See Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 335 (2000) (citing Cal. Lab. Code § 2922).[4]

        Defendant argues that the Board's actions at the October 10, 2017 meeting implicitly repealed all of these existing protections. However, the relevant District policies were not even mentioned at the October 10, 2017 meeting, and there was no discussion of plaintiff's employment status and protections beyond O'Hern's comments. (See generally Pl.'s Ex. 4, Partial Tr. of Oct. 10, 2017 Board Meeting (Docket No. 81-4); Oct. 10, 2017 Minutes.) Importantly, the motion approved by the Board made no mention of plaintiff's employment type, only the title change and compensation increase. (See Oct. 10, 2017 Minutes at 140-1-117.)

        A cursory remark by O'Hern--who was a manager and not a member of the Board--that plaintiff was "at-will" did not serve to repeal the procedural protections established by the District's ordinances, policies, and explicit promises to plaintiff. See McGraw v. City of Huntington Beach, 882 F.2d 384, 388 (9th Cir. 1989) (concluding, in light of the "City Council's stated purpose of protecting City employees from dismissal

---

[4] Defendant testified that he understood plaintiff to not be an at-will employee prior to the October 10, 2017 board meeting. (See Dep. of Steve Stump ("Stump Dep.") (Docket No. 102-12) at 254.)

without 'just cause,'" that City Council did not terminate employee's "permanent" status "sub silentio upon promotion, once again subjecting the promoted employee to the risks of . . . 'at-will' employment status"); City & County of San Francisco v. All Persons Interested in Matter of Proposition C, 51 Cal. App. 5th 703, 715 (1st Dist. 2020) (quoting Kennedy Wholesale, Inc. v. State Bd. of Equalization, 53 Cal. 3d 245, 249, 279 (1991)) (because "'the law shuns repeals by implication,'" there was no implied repeal by subsequent legislative action that did "'not even mention'" the earlier legislative action).

Defendant relies on Iscoff v. Police Commission of City & County of San Francisco, which held that "where a subsequent ordinance is so conflicting with and repugnant to an earlier one that the two cannot stand together, the later enactment is controlling and the earlier one is repealed by implication." 222 Cal. App. 2d 395, 409 (1st Dist. 1963). This case is not on point for two reasons. First, O'Hern's comments cannot be equated with a binding action of the Board. Second, even if O'Hern's comments had legal effect, taken in context they are not wholly inconsistent with plaintiff's pre-existing employment protections. O'Hern intended the "at-will" and "at the pleasure of" descriptions to apply to the title change and salary increase, which would only be in effect so long as the Board felt it necessary, at which time plaintiff would revert to her previous position. (See O'Hern Decl. ¶¶ 17-20; see also Oct. 10, 2017 Minutes at 140-1-055 (indicating that plaintiff could revert to former position once the new General Manager was capable of

performing all duties).)[5]

The court therefore concludes that there is no genuine dispute of material fact as to plaintiff's employment status and grants plaintiff's cross-motion for partial summary judgment, establishing that plaintiff was not an at-will employee and had for-cause and procedural protections according to the District's policies and the terms of her employment.

B. Qualified Immunity

The court next turns to the question of whether defendant Stump is entitled to qualified immunity. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009).

In determining whether a state official is entitled to qualified immunity on summary judgment, the court first determines "whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right." Sandoval v. County of San Diego, 985 F.3d 657, 671 (9th Cir. 2021) (internal quotation marks omitted).

The court then determines "whether the right was clearly established such that a reasonable official would [have] known that he was engaging in unlawful conduct." Levine v. City of Alameda, 525 F.3d 903, 906 (9th Cir. 2008); see also Pearson,

---

[5] Defendant also cites Blotter v. Farrell, 42 Cal. 2d 804, 811 (1954), for the proposition that "the power to enact ordinances implies power, unless otherwise provided in the grant, to repeal them." The relevance of this case is unclear, as the Board's general ability to repeal prior ordinances is not in question here.

10

555 U.S. at 244. If the right was clearly established, the court evaluates whether a reasonable person in the position of the defendant would know that the conduct at issue violated that right. Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled on other grounds by Pearson, 555 U.S. 223; Levine, 525 F.3d at 906.

Plaintiff alleges that defendant violated her right to procedural due process. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). The existence of a property interest is determined by sources independent of the Constitution, for instance state law or the terms of an individual's employment. See id. at 578; Dorr v. Butte County, 795 F.2d 875, 876 (9th Cir. 1986). Under California law, a permanent public employee "dismissible only for cause" possesses a "'property interest in his continued employment which is protected by due process.'" Dorr, 795 F.2d at 876 (quoting Skelly, 15 Cal. 3d at 207-08). As explained above, plaintiff was a permanent public employee dismissible only for cause. Accordingly, plaintiff held a constitutionally protected property interest in her continued public employment and was entitled to procedural due process. See Roth, 408 U.S. at 569; Dorr, 795 F.2d at 876.

Plaintiff was summarily terminated without any opportunity to be heard, which defendant does not dispute. (See Stampfli Decl. ¶¶ 61-62; Mot. at 7-12; Stump Decl. ¶¶ 12-13.) The court thus concludes that there is sufficient evidence to

11

establish that plaintiff's procedural due process rights were violated.  See Austin v. Univ. of Oregon, 925 F.3d 1133, 1139 (9th Cir. 2019) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)) ("'some form of hearing is required before an individual is finally deprived of a property interest'").

The court next considers whether the procedural due process right at issue was clearly established.  A right is clearly established for purposes of determining qualified immunity if the "contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Saucier, 533 U.S. at 202.  In determining whether the right at issue was clearly established, the court may not "define clearly established law at a high level of generality."  See Ashcroft v. Al-Kidd, 563 U.S. 731, 742 (2011).  Rather, "the clearly established law must be particularized to the facts of the case."  White v. Pauly, 580 U.S. 73, 79 (2017) (internal quotation marks omitted).

As this court previously found (see Docket No. 48 at 11), the right to procedural protections for permanent public employees who are dismissible only for cause according to the terms of their employment is well-established under federal law.  See Roth, 408 U.S. at 569; Dorr, 795 F.2d at 876; Skelly, 15 Cal. 3d at 207-08.  This formulation of the right at issue is appropriately tailored to the facts here.  Cf. Flores v. Von Kleist, 739 F. Supp. 2d 1236, 1255 (E.D. Cal. 2010) (Burrell, J.) (defining the relevant right for purposes of "clearly established" analysis as whether "due process protections are

12

implicated where the plaintiff has a legitimate expectation of continued employment stemming from a mutually explicit understanding") (internal quotation marks omitted).[6]

The outcome here thus turns on whether a reasonable official in defendant's position could have "reasonably believed" that his conduct did not violate a clearly established constitutional right.  See Levine, 525 F.3d at 906; see also Saucier, 533 U.S. at 199.  If so, defendant will be entitled to qualified immunity.  See id.

Defendant's counsel argues that defendant "considered what legal effect prior resolutions, practices, or policy manuals of the District might have" on plaintiff's employment status.  (Mot. at 12.)  However, defendant himself testified otherwise, explaining that once he learned that plaintiff was referred to as an "at-will employee" during the October 10, 2017 meeting, defendant concluded that he could terminate plaintiff without cause or procedural protections.  (See Stump Dep. at 94, 102, 131, 266.)  In coming to this conclusion, defendant did not consider the effect of any sources other than the October 10,

---

[6] Defendant proposes that the court define the issue as whether "a public employee who was told that they are 'at will' and serve at the 'pleasure of' the appointing authority during the creation of their management-level position possess [sic] a constitutionally protected interest in their continued employment."  (See Def.'s Reply (Docket No. 107) at 20.)  This formulation is too factually granular.  See Bonivert v. City of Clarkston, 883 F.3d 865, 872 (9th Cir. 2018) (officials may "still be on notice that their conduct violates established law even in novel factual circumstances").  Further, this formulation is inappropriately skewed in favor of defendant, as it misconstrues the facts and fails to account for the litany of evidence establishing that plaintiff was not an at-will employee.

2017 meeting.  (See id.)

Defendant's assertion that he reasonably believed his conduct was lawful is thus entirely based on O'Hern's comments at the board meeting.  Defendant's alleged conclusion about plaintiff's employment status was not reasonable given the circumstances here.  For instance, defendant was aware that plaintiff's title and salary change were only a temporary "stop gap measure."  (See Stump Decl. ¶ 9.)  Defendant was also aware that the District's at-will employees, including plaintiff, could retain some of the rights laid out in the union contract.  (See Stump Dep. at 285.)  A reasonable official in defendant's position would not have drawn conclusions about plaintiff's employment status based solely on offhand comments made by a manager--not a member of the Board--during a presentation.  Rather, a reasonable official would have investigated plaintiff's employment status and based his decision upon the available information.  Had defendant properly investigated the issue, he would have considered the applicable ordinances and information concerning the promises made to plaintiff, which establish that plaintiff was not an at-will employee.

Defendant's failure to properly investigate is especially glaring given that both the District and defendant had retained legal counsel in response to the litigation risk occasioned by defendant's actions in placing plaintiff on leave. (See Minutes of Adjourned Special Board Meeting, Jan. 17, 2020 (Docket No. 102-25 at 2-3) ¶ 9; Minutes of Adjourned Special Board Meeting, Feb. 5, 2020 (Docket No. 102-25 at 4-5) ¶ 5.)

14

Defendant participated in multiple board meetings where both the District's counsel and his counsel discussed that litigation risk.  (See id.; Stump Dep. at 258-59.)  Despite all this, defendant failed to inquire about the legality of his intended conduct with either the District's lawyer or his own lawyer, instead basing his conclusions entirely on a few words in the October 10, 2017 board meeting minutes.  (See Stump Dep. at 102-03, 107-09.)

In Levine, the Ninth Circuit concluded that the defendant supervisor had qualified immunity based on a reasonable but mistaken belief that he was acting lawfully in terminating the plaintiff, a public employee, without a pretermination hearing.  525 F.3d at 906-07.  This belief was reasonable because the supervisor instructed his agent to ensure that the plaintiff's due process rights were respected, and because the plaintiff's union contract stated that he was not entitled to a pretermination hearing.  Id. at 907.

Unlike the supervisor in Levine, it does not appear that defendant was endeavoring to respect plaintiff's rights; on the contrary, it seems that rather than attempting to truly discern plaintiff's employment status and protections, defendant was searching for any basis to support his desire to oust plaintiff.  In defendant's words, once he saw the term "at-will" in the meeting minutes, that was "all [he] needed"--he "[could not] get any better luck than that."  (Stump Dep. at 94, 121.)

Further, unlike the union contract in Levine, a manager's comments during a meeting cannot be reasonably

15

considered to have binding legal effect.  And in contrast to the instant case, there was no indication in Levine that investigation of the plaintiff's employment rights would have yielded evidence clearly showing that the plaintiff had the right to a pretermination hearing.  See 525 F.3d at 907.

Because there is sufficient evidence to establish a constitutional violation and a reasonable official in defendant's position would have known he was violating a clearly established right, defendant is not entitled to qualified immunity.  See Sandoval, 985 F.3d at 671; Levine, 525 F.3d at 906.

IT IS THEREFORE ORDERED that defendant Steve J. Stump's motion for summary judgment (Docket No. 72) be, and hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's cross-motion for partial summary judgment (Docket No. 102) be, and hereby is, GRANTED, establishing that plaintiff was not an at-will employee and had for-cause and procedural protections according to the District's policies and the terms of her employment.

Dated:  February 23, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

16